# UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICROSOFT CORPORATION,<br>SAP AG, and SAP AMERICA, INC.,<br><br>   Plaintiffs,<br><br>   v.<br><br>DATATERN, INC.,<br><br>   Defendant. | **Consolidated Cases:**<br><br>Civil Action No. 11-cv-02365-RJH<br>Civil Action No. 11-cv-02648-RJH |

## DATATERN'S REPLY MEMORANDUM
## IN SUPPORT OF MOTION TO STAY OR DISMISS

|   |   |
|---|---|
|   | DATATERN, INC.<br>*By its attorneys,* |
| OF COUNSEL: | Lee Carl Bromberg<br>McCarter & English LLP |
| William A. Zucker<br>wzucker@mccarter.com<br>Erik Paul Belt<br>ebelt@mccarter.com<br>Kara A. Lynch<br>klynch@mccarter.com<br>McCarter & English, LLP<br>265 Franklin Street<br>Boston, Massachusetts  02110 | 265 Franklin Street<br>Boston, MA  02110<br>(617) 449-6500<br>lbromberg@mccarter.com<br><br>and<br><br>245 Park Avenue<br>New York, New York  10167<br>(212) 609-6800 |

August 22, 2011

**INTRODUCTION**

Plaintiffs' have failed to show that the interests of justice would be frustrated by the issuance of a stay. On the contrary, a stay of this matter pending the reexamination of DataTern's '402 patent makes perfect sense, given that this case is in its early stages and that the primary purpose of the reexamination procedure is to provide the Court with the expert view of the USPTO" so it can conserve its resources when deciding issues arising out of a patent's validity and enforcement. *Ascii Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1380(N.D. Cal. 1994) ("Congress enacted the USPTO reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts"). For this reason, "courts routinely issue stays pending the outcome of reexamination proceedings." *Bausch & Lomb Inc. v. Rexall Sundown, Inc.*, 554 F. Supp. 2d 386, 389 (W.D.N.Y. 2008). Indeed, a stay is especially warranted here, where anonymous third parties have already submitted prior art considerations involving the '402 patent to the USPTO, DataTern has already requested a reexamination of its patent, there is no jurisdiction over Plaintiffs declaratory action and the filing of this action smacks of forum shopping. It is well settled that mere apprehension or economic interest, absent any "adverse legal interest" existing between Plaintiffs and DataTern, does not confer jurisdiction under the Declaratory Judgment Act. *Microchip Tech. Inc. v. Chamberlain Grp., Inc.* 441 F.3d 936, 942 (Fed. Cir. 2006). Accordingly, this case should be dismissed so that it cannot be used to forum shop and interfere with DataTern's pending claims against direct infringers in the Eastern District of Texas.

**I.  A STAY IS WARRANTED AT THIS STAGE OF THE LITIGATION.**

There is ample support for DataTern's motion to stay the matter while the USPTO re-examines the '402 patent when this case is in its infancy. Grant of the reexamination is likely as

all that need be demonstrated is that there is a substantial new question of patentability ("SNQP"). The threshold for SNQP is low. 35 U.S.C. 304; MPEP §§ 2216, 2242. As of June 30, 2011, the USPTO granted 92% of all *ex parte* reexamination requests. *See* USPTO *Ex Parte Reexamination Data*, available at http://www.uspto.gov/patents/stats/Reexamination Information.jsp. DataTern has submitted the primary three prior art references identified by third parties that question the validity of the '402 patent. For example, a third party submitted the Li patent to the USPTO and identified it as a reference that "clearly anticipates" claim 1 of the '402 Patent. *See* Exhibit D to DataTern's Motion to Stay or Dismiss [D.N. 38]. The Chang patent and the subject matter of the Srinivasan patent were identified in the invalidity contentions submitted by defendants in the Texas litigation. *See id.* Thus, parties with a vested interest in challenging the patent's validity have already deemed these references appropriate for reexamination.

Plaintiffs argue, based on two inapposite cases, that the USPTO's decision on the validity of the '402 patent would not narrow the issues before this Court. That is incorrect, as a final decision on the reexamination proceeding will inform the Court of the validity and scope of the '402 patent. If the matter is not dismissed, this will focus discovery in the case and facilitate the trial of the parties' claims. *See Sulzer Inc. v. Black Clawson Co.,* No. 93-8721, 1995 U.S. Dist. LEXIS, at * 2-3 (S.D.N.Y., June 14, 1995) (recognizing that awaiting the conclusion of the USPTO's examination is the most efficient and timely way for a district court to resolve a dispute between parties). Therefore, it is entirely appropriate that this Court avail itself of the USPTO's expertise and resources in determining the validity of the '402 patent. *Firepass IP Holdings, Inc. v. Airbus Americas, Inc.*, No. 09-4234, 2011 U.S. Dist. LEXIS 72409, at * 4-5 (E.D.N.Y. July 6, 2011) ("even if the reexamination does *not* result in amendment or

cancellation of the claims, the Court will benefit from the expertise of the PTO on the question of validity over the prior art"); *Snyder Seed Corp. v. Scrypton Systems, Inc.*, No. 98-87S, 1999 U.S. Dist. LEXIS 12149, at * 5-6 (W.D.N.Y. June 11, 1999) ("One purpose of the reexamination procedure is to. . . provide the district court with the expert view of the PTO when a claim survives the reexamination proceeding").

In similar instances, the courts have granted stays pending reexamination. For example, in *Bausch & Lomb Inc. v. Rexall Sundown, Inc.*, 554 F. Supp. 2d 386, 389 (W.D.N.Y. 2008), the court granted a stay even though litigation had been pending for four years because "[s]ubstantial discovery and motion practice, including a likely *Markman* hearing, remains to be conducted before the case is trial ready". The court observed that stays are typical when sought early in the litigation:

> One purpose of the reexamination procedure is to eliminate trial of the issue of patent claim validity (when the claim is canceled by the PTO), or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives a reexamination proceeding). . . The procedure was intended to provide an inexpensive, expedient means of determining patent validity which, if available and practical, <u>should be deferred to by the courts</u>. . . especially where the infringement litigation is in the early stages. . . As various judges have observed, <u>courts routinely issue stays pending the outcome of reexamination</u> proceedings, particularly in cases where the litigants have not made substantial progress towards trial. . .

*See Id*. (Emphasis added) (internal citations and quotation marks omitted). The Southern District of New York in *Softview Computer Products Corp. v. Ergo View Tech. Corp.*, No. 97-8815, 2000 U.S. Dist. LEXIS 11274, at * 9-10 (S.D.N.Y. 2000) similarly stayed a declaratory judgment action between a supplier and a patent holder because:

> a stay will necessarily simplify the issues. If the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified. Similarly, if the reexamination proceeding reaffirms all the claims as issued, the Court will then have the expert analysis of the prior art that allegedly invalidates or limits the claims. . . Second, although there has been a great deal of activity in this litigation to date. . . the *Markman* hearing has not yet been held and the

3

> Pretrial Order has not been prepared.  <u>It would be a serious waste of both the parties' and the Court's resources</u> if the *Markman* and summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the reexamination proceeding.

(Emphasis added).

For these reasons, Plaintiffs' reliance on *Touchtunes* and *Xerox* is misplaced.  In *Touchtunes*, unlike this case, a stay was sought on the eve of trial.  *See Touchtunes Music Corp. v. Rowe Internat'l Corp.*, 676 F. Supp. 2d 169, 178 (S.D.N.Y. December 15, 2009) ("discovery is substantially completed, including the depositions of witnesses and the exchange of approximately 750,000 pages of documents and electronic files.  The parties have also completed claim construction briefing.  Given the stage of the proceedings, a stay will not serve to preserve judicial economy").  Moreover, the defendant did not request a stay pending the USPTO's reexamination of its patents; instead it sought a stay pending its <u>appeal</u> of the USPTO's final rejection of its patents under reexamination.  *See id.* at 178-179.  The court carefully distinguished the scenario from a typical request for a stay pending reexamination.  *Id.* at 178 ("Although Arachnid has noted the relatively short period of time required thus far for the reexamination process before the PTO . . ., it offers no support for its suggestion that the appeal will proceed with similar dispatch . . . As another court has previously noted, no one can predict the outcome or the timing of these [appeal] proceedings").  As the *Touchtunes* court recognized, the USPTO reexamines patents in an expedient manner. *See id.*  That process is only hastened when the USPTO learns that the patents before it are subject to litigation.  *See* § 2260 of the USPTO's Manual of Patent Examining Procedure (MPEP) (8th Ed. July 2010 Rev.) ("Any cases involved in litigation, whether they are reexamination proceedings or reissue applications, will have priority over all other cases").

Similarly, in *Xerox*, the court refused to issue a stay where fact discovery had concluded,

4

dispositive motions were filed and the action was ready for trial. *See Xerox Corp. v. 3Com Corp.*, 96 F. Supp. 2d 404, 407 (W.D.N.Y. 1999). Other courts have used *Xerox* to draw a distinction between cases such as this, where DataTern seeks a stay at the pleadings stage, and those where a stay is sought on the eve of trial. *See Pass & Seymour, Inc. v. Hubbell, Inc.*, 532 F. Supp. 2d 418, 435 (N.D.N.Y. 2007) (distinguishing *Xerox* stating "this case is plainly in its infancy... thus presenting a very different situation than in many other circumstances where stays have been denied as having been sought too late in the litigation").

Although Plaintiffs claim that the Court should deny the motion to stay because it is *conceivable* that Plaintiffs could assert other invalidity defenses in the future that the USPTO may not consider now, this Court already ruled in *Aerotel* that a reexamination does not have to narrow every conceivable issue in a litigation in order to warrant a stay.[1] *See Aerotel v. IDT Corp.*, No. 03-6496, 2003 U.S. Dist. LEXIS 23340, at * 4 (S.D.N.Y. December 29, 2003) (" . . . while Aerotel may believe that the re-examination will leave the patent claims untouched, there is a substantial risk of wasting the resources of this Court and the parties should Aerotel's belief prove faulty. Conversely, there are significant gains to be realized in staying the action until the PTO has concluded its evaluation of the patent").

DataTern's actions have been anything but dilatory. It has, as stated, filed its reexamination request with the USPTO. This case should be stayed for the reasons cited in *Sulzer Inc. v. Black Clawson Co.*, No. 93-8721, 1995 U.S. Dist. LEXIS 8328 (S.D.N.Y. June 14, 1995) ("awaiting the conclusion of the P.T.O. proceeding and then proceeding expeditiously with the present litigation is the most efficient and timely way to resolve the dispute between the parties and to dispel any cloud") and in *Gaymar Industries, Inc.*, 2009 U.S. Dist. LEXIS 89453,

---

[1] Indeed, Microsoft or SAP could bring any additional contention to the attention of the USPTO as part of the re-examination. 35 USC 301; MPEP § 2203.

at * 8 ("the disadvantages of the delay are outweighed by the advantages that come with allowing the PTO to complete reexamination").

## II. DISMISSAL IS PROPER IN THE ABSENCE OF AN ADVERSE LEGAL INTEREST BETWEEN THE PARTIES.

Contrary to Plaintiffs' citations, the case law does not support maintenance of this action. In one of the leading cases on declaratory judgment jurisdiction, *Microchip Tech. Inc. v. Chamberlain Grp., Inc.* 441 F.3d 936 (Fed. Cir. 2006), the Federal Circuit concluded that a patent holder's infringement suit against a plaintiff's customers did not create an adverse legal interest necessary to confer jurisdiction under the Declaratory Judgment Act. "What is essentially at issue in this appeal is whether Microchip's purported apprehension of its customers being sued satisfies the first criterion for declaratory judgment jurisdiction. We conclude that the apprehension, absent any 'adverse legal interest' existing between Microchip and Chamberlain, does not meet that test." *See id*. at 942. The Federal Circuit explained:

> . . . .Chamberlain has contended, and Microchip has not sufficiently rebutted that contention, that Microchip has never been accused of infringing the patents-in-suit. While Microchip's customers may or may not have "an adverse legal interest" or have been at "legal risk," they were not parties to this action. Nor has Microchip established a legal relationship between it and a customer that had a legal interest adverse to Chamberlain, such as the existence of an indemnity agreement between Microchip and its customer. At most, Microchip had only an economic interest in clarifying its customers' rights under Chamberlain's patents, which may have facilitated the sale of Microchip's products. Microchip perhaps would economically have benefited if its customers had no fear of suit by Chamberlain. Such an economic interest alone, however, cannot form the basis of an 'actual controversy' under the *Declaratory Judgment Act.* Microchip itself was under no threat of legal harm.

(Emphasis in original). *See Id.* at 943.

Subsequent decisions, including *Arris*, upon which Plaintiffs' rely in their opposition brief, have cited *Microchip* with approval. *See Arris*¸ at 1375 citing *Microchip*, 441 F. 3d at 943 ("in patent cases before the Supreme Court's decision in *MedImmune*, the regional circuits and

6

our court held that economic injury is not alone sufficient to confer standing. *MedImmune* did not abandon this rule. To the contrary, *MedImmune* adopted an "adverse legal requirement' . . . and summarizing the question of declaratory judgment as whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having *adverse legal interests*, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment) (internal quotation marks omitted); *Creative Compound, LLC v. Starmark Labs,* No. 10-1445, 2011 U.S. App. LEXIS 12723, at * 30 (Fed. Cir. June 24, 2011) citing *Microchip*, 441 F. 3d at 943 ("Without an underlying legal cause of action, any adverse economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction").

Plaintiffs take the position that the *Arris*, *Nippon Electric,* and *Phoenix Solutions* cases stand for the proposition that declaratory judgment jurisdiction may be present in instances where the patent holder has no involvement with the declaratory plaintiff so long as the patentee has threatened to file an infringement claim against plaintiff's customers. *See* Opposition, at p. 12. While this interpretation of the cases may have superficial appeal, it ignores a seminal fact present in those cases and absent in this one-the declaratory plaintiffs in those cases had an <u>undisputed</u> <u>legal</u> <u>obligation</u> to indemnify and hold their customers harmless against the defendants' infringement suits.[2] *See, e.g., Arris Group  v. British Telecommunications PLC*, 639

---

[2]  Contrary to the Plaintiffs' assertions, the declaratory plaintiff in the *Arris* case had extensive contact with the defendant patentee on behalf of its customers:

> The parties -- including Arris -- met again at Arris' Suwanee office, where they discussed potential licensing. . . At the meeting, Arris presented a response to BT's infringement contentions. . . Following the August meeting, BT requested that Arris send 'formal rebuttal information' regarding its infringement contentions. . . and if further requested a telephone conference with the parties' technical people. . . Arris sent BT further materials containing its non-

7

ME1 12152889v.1

F.3d 1368, 1372 (Fed. Cir. 2011) (noting that pursuant to customer's demand to defend, indemnify and hold it harmless from patentees infringement assertions, declaratory plaintiff defended customer in pre-litigation settlement discussions); *Nippon Electric Gas Co., LTD v. Sheldon*, 489 F. Supp. 119, 122 (S.D.N.Y. 1980) ("plaintiff has entered [into] agreements with Sony and Panasonic to indemnify them against any liability that may incur due to the subject patents.  This circuit has previously held that such an agreement between a manufacturer and its licensee-customer creates an actual controversy such that the manufacturer may seek a declaratory judgment of the patent's invalidity"); *Microsoft Corp. v. Phoenix Solutions, Inc.*, 741 F. Supp. 2d 1156, 1162 (C.D. Cal. 2010) ("Because Microsoft is bound to indemnify American Express for infringement under the Tellme system, there is an actual controversy between Microsoft and Phoenix").

Although Plaintiffs produced customer letters notifying them of DataTern's infringement claims and in some cases requesting indemnification, there is <u>no evidence</u> that Plaintiffs have accepted these tenders or assumed the defense of these claims.  In fact, Microsoft admitted to DataTern's John Caruso that it "had <u>no obligations to indemnify or defend the Texas defendants</u>" against DataTern's infringement claims before it initiated this action.  *See* Declaration of John Caruso In Support of Motion to Dismiss or Stay ("Caruso Decl.") at ¶ 6 [D.N. 39] (emphasis added).  It is telling that Microsoft chose not to refute this admission in its Opposition brief, especially because it submitted a declaration from David Killough, the very person who made it on Microsoft's behalf.  *See* Declaration of David E. Killough in Support of Microsoft Corporation's Opposition to DataTern's Motion to Stay or Dismiss. [D.N. 45].  Although Mr.

---

> infringement arguments. . . Two conference calls took place thereafter. . . during which Arris presented its non-infringement arguments and BR responded to them.
> *Arris*, 639 F.3d at 1372.

8

Killough, Microsoft's in-house counsel, admits that he has personal knowledge of DataTern's claims against Microsoft's customers and that he has spoken with these customers about the infringement claims, <u>he never states that Microsoft has agreed to indemnify, defend, and hold these customers harmless</u> against DataTern's claims.  *See id.*

This is further supported by Plaintiffs' failure to intervene on behalf of their customers in any of the Texas cases, which they admittedly have known about for years.[3]  *See id*. at ¶ 4 ("Microsoft received correspondence addressed from BP America, Inc. . . .dated July, 10, 2009" concerning DataTern's infringement claims); *see also* Declaration of Lisa S. Buccino In Support of SAP's Opposition To DataTern's Motion To Stay Or Dismiss, at ¶ 6 [D.N. 43] ("On or about November 18, 2010, SAP received correspondence from The Bank of New York Mellon" notifying it of DataTern's infringement claims).  Without any discernable obligation to defend their customers, the Plaintiffs' only remaining contention is that DataTern's continuing efforts to protect its patent rights may hamper their business.  This, alone, is not enough to confer standing.  *See Arris*, 639 F.3d at 1374-1375 ("in the absence of a controversy as to a legal right, a mere adverse economic interest is insufficient to create declaratory judgment jurisdiction"); *Creative Compounds, LLC*, 2011 U.S. App. LEXIS 12723, at 30-31, citing *Microchip*, 441 F.3d at 943 ("In the absence of an indemnity agreement between Starmark and one of [its] customers, Starmark has only an economic interest in clarifying its customers' rights under Creative's patents.  Such an economic interest alone, however, cannot form the basis of an 'actual controversy' under the Declaratory Judgment Act").

Finally, DataTern's submission of claim charts to the Texas defendants referencing

---

[3]     Had Plaintiffs any real obligation to indemnify, they would have had to take over the Texas cases and these issues would be addressed directly in the Texas cases rather than this effort to forum shop despite the fact that no end user cases have been brought here.

9

Business Objects and ADO.Net does not establish an actual controversy with Plaintiffs; rather, it differentiates DataTern's infringement claims against the end users of these products from Microsoft and SAP. As the claim charts detail, the end users have <u>integrated</u> ADO.Net in a manner which infringes DataTern's patents. DataTern's objection is to the <u>manner</u> in which the Texas defendants employ Plaintiffs' products. For example, it is the end-user's employment of Microsoft's ADO.NET as part of a larger software framework that constitutes the infringement. Similarly, neither DataTern's conditional counterclaims (asserted as a result of Fed.R.Civ.P. 13(a)), nor DataTern's failure to provide Plaintiffs with a covenant not to sue create jurisdiction over Plaintiffs' declaratory judgment action. *See Salomon Bros., Inc. v. Huitong Internat'l Trust & Invest. Corp.*, No. 94-8559, 1996 U.S. Dist. LEXIS 17358, at * 9 (S.D.N.Y. November 21, 1996) ( ruling that when a party has asserted conditional counterclaims, the resolution of the primary claim must precede any decision as to the validity of the counterclaims); *see also Prasco, LLC v. Medicis Pharmaceutical Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008) ("a patentee has no obligation. . . to make a definitive determination, at the time and place of the competitors' choosing, that it will never bring an infringement suit"). Because Plaintiffs cannot establish an adverse legal interest between the parties, this Court should dismiss Plaintiffs' declaratory judgment claims against DataTern with prejudice.

### III.  CONCLUSION.

For the above-stated reasons and for the reasons set forth in DataTern's Memorandum In Support of Motion to Stay or Dismiss, DataTern respectfully requests that this Court stay the consolidated cases pending reexamination of the '402 patent. If the Court grants a stay, it need not decide whether dismissal is appropriate. Alternatively, Microsoft has neither pleaded nor supplied the requisite jurisdictional facts. Plaintiffs have failed to show an actual controversy, and, accordingly, this Court should dismiss for lack of subject matter jurisdiction.

10

| | |
|---|---|
| Dated: August 22, 2011 | McCARTER & ENGLISH, LLP |
| OF COUNSEL: | By: /s/Lee Carl Bromberg_____ |
| | Lee Carl Bromberg |
| William A. Zucker | 265 Franklin Street |
| wzucker@mccarter.com | Boston, MA  02110 |
| Erik Paul Belt | (617) 449-6500 |
| ebelt@mccarter.com | lbromberg@mccarter.com |
| Kara Lynch | |
| klynch@mccarter.com | and |
| McCarter & English, LLP | 245 Park Avenue |
| 265 Franklin Street | New York, New York  10167 |
| Boston, Massachusetts  02110 | (212) 609-6800 |
| | *Attorneys for Defendant* |
| | *DataTern, Inc.* |

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the above Memorandum In Support of Motion To Stay Or Dismiss was served on this 22nd day of August, 2011 upon counsel of record for Microsoft Corp., SAP AG and SAP America, Inc. via *ECF*.

/s/ Lee Carl Bromberg_____
Lee Carl Bromberg

11

ME1 12152889v.1