IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>    Plaintiff,<br>         v.<br><br>DATATERN, INC.,<br><br>    Defendant. | Civil Action No. 11-cv-2365-KBF<br>Civil Action No. 11-cv-2648-KBF |
| SAP AG AND SAP AMERICA, INC.,<br><br>    Plaintiffs,<br>         v.<br><br>DATATERN, INC.,<br><br>    Defendant. | **ECF Case** |

**MEMORANDUM OF LAW BY MICROSOFT CORPORATION, SAP AG AND
SAP AMERICA, INC. IN SUPPORT OF THEIR MOTION FOR AN ORDER
<u>REGARDING THE NON-ASSERTION OF CLAIMS BY DATATERN, INC.</u>**

**PRELIMINARY STATEMENT**

DataTern has now repeatedly agreed to limit its infringement assertions against customers and/or end-users of Microsoft and SAP software to only those patent claims identified in DataTern's infringement contentions here—including, at Judge Holwell's urging, on the record at a January 31, 2012 hearing. Nevertheless, following rumors that Judge Holwell intended to step down from the bench and after Judge Holwell ultimately left the bench, DataTern completely reneged on its agreement. As demonstrated herein, Judge Holwell's determination that Plaintiffs are entitled to this relief was correct, and Plaintiffs respectfully request that the Court enter Plaintiffs' proposed order concerning non-assertion of those patent claims.

**RELEVANT PROCEDURAL HISTORY**

From approximately April 2008 to April 2011, DataTern sued 113 customers and/or end-users of Microsoft and SAP software in the Eastern District of Texas. DataTern alleged there, among other things, that the use of Microsoft and SAP software by the Texas action defendants facilitated their infringement of two DataTern patents (U.S. Pat. Nos. 5,937,402 and 6,101,502, the "DataTern Patents").

*The Declaratory Judgment Actions*

On April 7, 2011, and April 18, 2011, Microsoft and SAP brought declaratory judgment actions, respectively, against DataTern. In those actions, Plaintiffs sought judgments that the DataTern Patents are invalid and/or that Microsoft and SAP software does not infringe or cause

1

infringement.[1]  On June 24, 2011, DataTern counterclaimed against Plaintiffs, alleging that Microsoft and SAP are each liable as indirect infringers of the DataTern Patents.

On July 21, 2011, the Court entered a scheduling order (the "Initial Scheduling Order"). *See* Docket No. 22.  On July 22, 2011, DataTern moved to dismiss, or in the alternative, to stay this action.  *See* Docket No. 37.  Briefing on those motions ensued, and was completed as of August 22, 2011.

*Claim Construction*

Following the briefing, the Parties proceeded to exchange claims that required construction and proposed constructions, as required by the Initial Scheduling Order.  Because DataTern's counterclaims did not specify which of the 64 claims in the DataTern Patents that Plaintiffs allegedly infringed, Microsoft and SAP requested that DataTern withdraw from the action any patent claims it did not intend to assert.  With respect to such withdrawn patent claims, Plaintiffs agreed to forego invalidity assertions.  In exchange, DataTern agreed that it would not assert the withdrawn patent claims against either (i) Microsoft and/or SAP, in this or future actions, with respect to the presently accused software, or (ii) against customers or end-users of the presently accused software.  *See* Exhibit A (November 3, 2011 correspondence between Plaintiffs' and DataTern's counsel).  Subsequently, DataTern withdrew 39 patent claims, leaving 25 claims in contention.

On November 18, 2011, the parties exchanged claim terms requiring construction. Microsoft and SAP provided the terms it believed required construction for all 25 of those patent claims and, accordingly, identified 56 claim terms.

---

[1] These actions have been consolidated under Civil Action No. 11-cv-2365-KBF for pre-trial purposes only.  *See* Docket No. 34.

By letter to the Court dated December 8, 2011, DataTern objected to the number of claim terms identified by Microsoft and SAP.  *See* Exhibit B.  In response, Plaintiffs advised DataTern that they could reduce the number of terms requiring construction if DataTern would further narrow the patent claims that it contends that Plaintiffs infringed and provide infringement contentions.

Thereafter, the parties agreed to exchange infringement and invalidity contentions with respect to those patent claims.  As part of the agreement, Microsoft and SAP agreed that they would limit the scope of their declaratory judgment actions to only the narrowed set of patent claims *if* DataTern agreed not to assert the withdrawn claims against Microsoft's and SAP's customers and end-users in the existing or any future DataTern lawsuits against the customers and end-users.

Microsoft and SAP's counsel confirmed this agreement through a series of e-mails with DataTern's counsel in January 2012.  On January 12, 2012, Plaintiffs' counsel wrote:

> I understand that DataTern would agree not to assert any claims not included in the infringement contentions against a Microsoft/SAP customer, to the extent that [the Microsoft and SAP accused products] are implicated.

Exhibit C at pp. 6-7.  On January 23, 2012, counsel for Microsoft and SAP asked:

> [C]an you confirm…that DataTern agrees not to assert any claims not included in the infringement contentions against a Microsoft/SAP customer, to the extent that the accused Microsoft and SAP software is implicated?"

*Id.* at 2.  On January 25, 2012, counsel for Microsoft wrote:

> Following our telephone conversation this morning, this will serve to confirm DataTern's agreement below [i.e., the agreement set forth in the January 23 e-mail reproduced above] concerning non assertion of claims against Microsoft and SAP customers.  Please confirm receipt of this e-mail.

Counsel for DataTern responded: "Confirmed receipt."  *Id.* at 1.

3

*The Proposed Scheduling Order*

That same day, the Court held a telephonic conference to address DataTern's request to narrow the claim terms for construction. Plaintiffs' counsel informed the Court that the parties had agreed upon the exchange of infringement and invalidity contentions as well as to related scheduling modifications. The Court scheduled oral argument on DataTern's pending motions to dismiss and/or stay for January 31, 2012 and asked the parties to submit a joint proposed revised scheduling order in advance of that argument.

Thereafter, Plaintiffs sent DataTern a proposed joint stipulation adjusting the dates. The proposed stipulation included language (set forth in a footnote) memorializing DataTern's agreement to limit its infringement assertions against such customers and/or users to only those patent claims identified in its infringement contentions here. In response, DataTern did not deny that it had agreed to the *substantive* terms. Rather, DataTern took issue solely with the *form* of the agreement—it contended that DataTern's non-assertion agreement did not belong in a Court order. *See* Exhibit D (January 31, 2012 e-mail from DataTern's counsel, in response to Microsoft's counsel's request that DataTern confirm authorization to file the joint stipulation, stating, "Take the footnote [dealing with non-assertion] out. Otherwise, the answer [as to authorization to file the joint stipulation] is no. We think the better course is to do it as a side agreement. It should NOT be part of a court scheduling order.") (emphasis in original).

Accordingly, Microsoft and SAP submitted a proposed scheduling order to the Court on January 31, 2012 in which Plaintiffs noted the parties' agreement as to DataTern's non-assertion of certain claims as well as DataTern's objection to including such agreement in the scheduling order. *See* Docket No. 37. Particularly, footnote 1 thereof states:

> The Parties have reached an agreement concerning DataTern's non-assertion of certain purported patent claims against users of Microsoft and SAP software; Plaintiffs proposed the

4

following language—which they believe accurately memorializes that agreement—to DataTern for inclusion in this Order:

> Insofar as any of the 'Accused Products' (as defined in DataTern's July 1, 2011 counterclaims in this action) form a basis, in whole or in part, for any current or future patent infringement claim for relief by DataTern in any forum against customers and/or users of the Accused Products, DataTern will limit its infringement assertions against such customers and/or users to only those patent claims identified in its infringement contentions in this action.

DataTern has, however, objected to including such language in the proposed Scheduling Order . . .

*The January 31, 2012 Hearing*

Later that day, the Court held oral argument on DataTern's pending motions and denied both from the bench. As to the motion to dismiss, Judge Holwell ruled that "there is a cognizable adverse legal interest here to be litigated." Exhibit E (Jan. 31, 2012 Hearing Tr. at 22-23). As to Defendant's motion to stay, Judge Holwell ruled "that a stay would be inappropriate" because it would be "obvious prejudice to a party that has a justiciable controversy"—Microsoft and SAP in this case—"to be precluded from seeking resolution" of its issues, and considerations of judicial efficiency did not warrant a stay where it was unclear which court, New York or Texas, would reach final judgment first. *Id.* at 23-24.

Following its ruling, the Court inquired regarding Plaintiffs' proposed scheduling order. Plaintiffs' counsel reiterated that the parties had reached an agreement designed to narrow the claim terms under construction but advised the Court that the parties disagreed as to whether DataTern's agreement not to assert certain claims should be included in the revised scheduling order. The following exchange transpired:

> THE COURT: What seems to me the plaintiffs in this case want and probably are entitled to is not to face the situation in which this case goes forward—and let's assume that they win in this case – then to find a year down the road that DataTern brings a suit against a customer of Microsoft's, who then creates kind of a lock extension indemnification against Microsoft…

5

MR. ROCCI: Yes, Your Honor. And I think, if I may, we had agreement on that principle.

THE COURT: OK.

….

MR. ROCCI: So we've had an email exchange. And I'll read a pertinent part of one of the emails. This is to Mr. Belt from me.

"One other thing. Can you confirm, as I requested in a previous email in connection with this particular issue, that DataTern agrees not to assert any claims not included in the infringement contentions against a Microsoft or SAP customer, to the extent that the accused Microsoft and SAP software is implicated."

And that was sort of a casual way of expressing it.

And they emailed back and they said, we agree.

And in the proposed order that we handed up, in Footnote 1 we tried to formalize that agreement in language that's less casual.

And I don't believe that there's any dispute with the language in Footnote 1. I sent this to DataTern on Friday. I haven't heard that they disagree with it. I think the major disagreement is whether it should be in an order.

THE COURT: Is that the issue, Mr. Bromberg?

MR. BROMBERG: Yes, it is, your Honor.

We don't think it's appropriate in the scheduling order. We did reach an agreement that– –

THE COURT: Is it feasible to enter simply into a stipulation between and among counsel on that issue?

MR. BROMBERG: That's our proposal, your honor.

THE COURT: Why isn't that an acceptable procedure?

MR. ROCCI: Your Honor, our only concern is that it's somehow binding. Rather than a contract cause of action, it's a court order.

THE COURT: Well, I'll still order the stipulation.

MR. ROCCI: And then we're OK with it, your Honor.

THE COURT: All right.

*Id.* at 26-28. The Court ordered that such stipulation be filed by February 3, 2012 and later extended that deadline to February 8, 2012.

*The Proposed Stipulation*

On February 3, 2012, counsel for Microsoft and SAP sent a draft stipulation to DataTern parroting the language in footnote 1:

> IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned counsel, that insofar as any of the 'Accused Products' (as defined in DataTern's June 24, 2011 and July 1, 2011 counterclaims against Microsoft and SAP, respectively) form a basis, in whole or in part, for any current or future patent infringement claim for relief by DataTern in any forum against customers and/or users of the Accused Products, DataTern will limit its infringement assertions against such customers and/or users to only those patent claims identified in its infringement contentions in this action.

Exhibit F. On February 7, 2012, DataTern responded and sought to substantially revise the terms of its prior agreement. DataTern instead proposed the following language (rendered in a comparison view with Plaintiffs' proposal above):

> IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned counsel, that insofar as any of the 'Accused Products' (as defined in DataTern's June 24, 2011 and July 1, 2011 counterclaims against Microsoft and SAP, respectively) form a the sole basis, in whole or in part, for any a current or future patent infringement claim based on U.S. Patent No. 5,937,402 or U.S. Patent No. 6,101,502 for relief by DataTern in any forum (excluding pending cases in Texas and Massachusetts) against customers and/or users a Microsoft customer of the Accused Products which has a written indemnification agreement with Microsoft, or an SAP customer of the Accused Products which has a written indemnification agreement with SAP, DataTern will limit its infringement assertions against such indemnified customers and/or users in any such subsequent case to only those patent claims identified in its infringement contentions in this action so long as the indemnified customers agree to be bound by any determination in this action to the extent of Microsoft/SAP obligations under their respective written indemnity agreements.

Exhibit G. During a February 8, 2012 meet and confer, counsel Microsoft and SAP requested that DataTern reconsider its position. It declined to do so.

On February 9, 2012, Judge Holwell entered Plaintiffs' proposed scheduling order (*see* Docket No. 37), which this Court vacated by separate order dated February 14, 2012. *See* Docket No. 59.

## ARGUMENT

DataTern has now *repeatedly* agreed to limit its assertion of claims against Plaintiff's customers and end-users and should not be permitted to exploit Judge Holwell's exit from the bench to evade this important agreement.

*First*, contrary to DataTern's present effort to re-characterize its plain statements, DataTern agreed to limit its current and future pursuit of Microsoft and SAP customers and end-users. Rather, the *only* issue DataTern raised involved whether the Court should order such relief or whether the parties should instead just privately agree to it—through a side letter. *See* Exhibits C-D. The record is equally clear that DataTern confirmed that agreement before this Court; agreed to jointly memorialize that agreement with Plaintiffs; and consented to submit such agreement to the Court for entry. *See* Exhibit E, at 26-28.

*Second*, this Court has already decided that the parties' agreement is appropriate and, indeed, necessary in these circumstances and should be entered by the Court. Under the "law of the case" doctrine, that decision should be enforced.

Prior to leaving the bench, Judge Holwell ordered the parties to file a stipulation memorializing the agreement. *Id.* at 28. In ordering the stipulation, Judge Holwell reasoned that Plaintiffs "want and probably are entitled to . . . not . . . face the situation in which . . . a year down the road . . . DataTern brings a suit against a customer" and Plaintiffs find themselves contesting the same patents in a separate action. *Id.* at 26.

8

Under the "law of the case" doctrine, "a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation." *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991). A court should therefore "adhere to its own prior rulings in a given case "absent 'cogent' or 'compelling' reasons to deviate, such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *U.S. v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) (quoting *Doe v. New York City Dep't of Social Servs.*, 709 F.2d 782, 289 (2d Cir. 1983)); c.f., *Polycast Tech. Corp. v. Uniroyal, Inc.*, 792 F. Supp. 244, 264 (S.D.N.Y. 1992) (holding that "interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge . . . and may be modified to the same extent if the case is reassigned to another judge" where newly uncovered facts warranted reconsideration).

Here, in line with Judge Holwell's reasoned ruling, and given the absence of such "cogent" or "compelling" factors, the Court should grant Plaintiffs' proposed order.

## CONCLUSION

Accordingly, Microsoft and SAP respectfully request that this Court enter Plaintiffs' attached Proposed Order, which embodies the parties' agreement as to DataTern's non-assertion of certain claims.

Dated: February 14, 2012

|  |  |
|---|---|
| Steven J. Rocci<br>(rocci@woodcock.com)<br>Dale M. Heist<br>(heist@woodcock.com)<br>Daniel J. Goettle<br>(dgoettle@woodcock.com)<br>Aleksander J. Goranin<br>(agoranin@woodcock.com)<br><br>WOODCOCK WASHBURN LLP<br>Cira Centre, 12th Floor<br>2929 Arch Street<br>Philadelphia, PA 19104<br>Tel: +1 215 568 3100<br>Fax: +1 215 568 3439<br><br>*Attorneys for Plaintiff Microsoft Corp.* | By: /s/ Danielle L. Rose<br><br>Danielle L. Rose<br>(danielle.rose@kobrekim.com)<br>Michael S. Kim<br>(michael.kim@kobrekim.com)<br>Carrie A. Tendler<br>(carrie.tendler@kobrekim.com)<br><br>KOBRE & KIM LLP<br>800 Third Avenue<br>New York, NY 10022<br>Tel: +1 212 488 1200<br>Fax: +1 212 488 1220<br><br>*Attorneys for Plaintiff Microsoft Corp.* |
| Steven J. Rocci<br>(rocci@woodcock.com)<br>Dale M. Heist<br>(heist@woodcock.com)<br>Daniel J. Goettle<br>(dgoettle@woodcock.com)<br>Aleksander J. Goranin<br>(agoranin@woodcock.com)<br><br>WOODCOCK WASHBURN LLP<br>Cira Centre, 12th Floor<br>2929 Arch Street<br>Philadelphia, PA 19104<br>Tel: +1 215 568 3100<br>Fax: +1 215 568 3439<br><br>*Attorneys for Plaintiffs SAP AG and SAP America, Inc.* | By: /s/ Evangelos Michailidis<br><br>John Dellaportas<br>(dellajo@duanemorris.com)<br>Evangelos Michailidis<br>(emichailidis@duanemorris.com)<br><br>DUANE MORRIS LLP<br>1540 Broadway<br>New York, NY 10036<br>Tel: +1 212 692 1000<br><br>*Attorneys for Plaintiffs SAP AG and SAP America, Inc.* |