# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICROSOFT CORPORATION, ) <br> )<br> Plaintiff, )<br> )<br> v. )<br> )<br> DATATERN, INC., )<br> )<br> Defendant. )<br> ——————————————————— )<br> )<br>SAP AG and SAP AMERICA, INC., )<br> )<br> Plaintiff, )<br> )<br> v. )<br> )<br>DATATERN, INC., )<br> )<br> Defendant. )<br> ——————————————————— ) | CIVIL ACTION NO. 1:11-cv-02365-KBF <br> CIVIL ACTION NO. 1:11-cv-02648-KBF |

**DATATERN, INC.'S MEMORANDUM OF LAW IN
SUPPORT OF ITS REQUEST FOR CLARIFICATION
<u>REGARDING THE COURT'S JUNE 27, 2012, ORDER</u>**

ME1 13797937v.1

## **TABLE OF CONTENTS**
TABLE OF AUTHORITIES ................................................................................................... ii

BACKGROUND ............................................................................................................................2

ARGUMENT ..................................................................................................................................6

I.     THE ONLY CASE OR CONTROVERSY INVOLVING SAP IN THIS SUIT IS WHETHER BUSINESSOBJECTS INFRINGES THE '402 AND '502 PATENTS ..........6

II.    DATATERN'S FAILURE TO SERVE INFRINGEMENT CONTENTIONS UNDER THE '402 PATENT IS NOT A GROUND TO FIND THAT SAP DOES NOT INFRINGE THE '402 PATENT IN ANY RESPECT. .............................................8

CONCLUSION ...............................................................................................................................11

ME1 13797937v.1

Case 1:11-cv-02648-KBF   Document 121   Filed 07/24/12   Page 3 of 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brown v. McCormick*,
  608 F.2d 410 (10th Cir. 1979) ............................................................................................. 11

*DataTern, Inc. v. Eli Lilly and Company, et al.*,
  No. 2:10CV413 (E.D. Tex. July 14, 2012) ........................................................................... 3

*DataTern, Inc. v. Staples, Inc. et al.*,
  No. 2:10CV133 (E.D. Tex. July 14, 2012) ........................................................................... 3

*Enroute Sys. Corp. v. ArrivalStar S.A.*,
  No. C11-0451RSL (W.D. WA. March 28, 2012) ........................................................... 9, 10

*Falstaff Brewing Corp. v. Miller Brewing Co.*,
  702 F.2d 770 (9th Cir. 1983) ............................................................................................... 11

*Hoffman-LaRoche Inc. v. Mylan Inc.*,
  2009 WL 4796736 (D.N.J. Dec. 9, 2009) ............................................................................. 8

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982) ............................................................................................................ 10

*Kingspan Insulated Panels v. Centria, Inc.*,
  2012 WL 1987785 (M.D. Fla. June 4, 2012) ....................................................................... 8

*O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*,
  467 F.3d 1355 (Fed. Cir. 2005) .................................................................................. 9, 10, 11

*In re Papst Licensing GmbH & Co. KG Litig.*,
  767 F. Supp. 2d 1 (D.D.C. 2011) ............................................................................ 2, 6, 9, 10

*Steffel v. Thompson*,
  415 U.S. 452 (1974) .............................................................................................................. 7

*Streck, Inc. v. Research & Diagnostic Systems, Inc.*,
  665 F.3d 1269 (Fed. Cir. 2012) ......................................................................................... 7, 8

*Ty, Inc. v. Softbelly's, Inc.*,
  353 F.3d 528 (7th Cir. 2003) .............................................................................................. 10

*Yodlee, Inc. v. CashEdge, Inc.*,
  2007 WL 1454259 (N.D. Cal. May 17, 2007) .................................................................... 11

ME1 13797937v.1

**RULES**

Fed. R. Civ. P. 56(a) ...........................................................................................................................8

Fed. R. Civ. P. 16..............................................................................................................................9

Fed. R. Civ. P. 37............................................................................................................................11

Fed. R. Civ. P. 37(b) .......................................................................................................................11

Fed. R. Civ. P. 37(b)(2)...................................................................................................................11

ME1 13797937v.1

DataTern, Inc. respectfully requests clarification regarding the Court's June 27, 2012 Order (Docket # 102).  That Order granted SAP AG and SAP America, Inc.'s (collectively, "SAP") motion for partial summary judgment of noninfringement based on DataTern's not identifying, in its infringement contentions, infringement claims against SAP's BusinessObjects products relating to U.S. Patent No. 5,937,402 (the "'402 patent").[1]  DataTern has learned in recently provided discovery in this case, however, that SAP is a large Independent Software Vendor ("ISVs") of Microsoft products.  Because this lawsuit, the parties' pleadings, SAP's motion, and the Court's Order are limited to the question of whether BusinessObjects infringes the '402 patent, DataTern requests that the Court clarify that its Order does not apply to SAP's activities with regard to the '402 patent unrelated to its marketing, use, or sale of BusinessObjects, such as SAP's resale of Microsoft products.  Absent this clarification, SAP may seek to use the Court's Order to allow it to engage in infringing activity which was never the subject of this action, much less any merits-based decision by the Court.

The clarification requested by DataTern is appropriate because: (a) SAP never established any case or controversy as to its conduct unrelated to BusinessObjects; (b) SAP did not move for partial summary judgment as to such conduct; (c) there have been no factual findings with regard to such conduct; and (d) DataTern's failure to submit infringement contentions against BusinessObjects under the '402 patent cannot serve as a basis to find that SAP does not infringe the '402 patent with regard to its activities unrelated to the sale of BusinessObjects.

---

[1] DataTern makes no claim that the '402 patent is infringed by BusinessObjects.

## BACKGROUND

This action was commenced on April 18, 2011, upon the filing of SAP's four-count Complaint for Declaratory Judgment (Docket # 1 in Civil Action No. 11-cv-02648-KBF). According to the Complaint, SAP filed this action "seeking a declaratory judgment (a) that U.S. Patent Nos. 5,937,402 … and 6,101,502 … are invalid and (b) that SAP's BusinessObjects enterprise software … does not infringe the '402 or '502 patents, nor has SAP infringed, induced others to infringe, or contributed to the infringement by others of the '402 or '502 patents." Complaint, ¶ 1. This is a classic declaratory judgment action where a manufacturer sues in order to stay related litigation against its customers. *See In re Papst Licensing GmbH & Co. KG Litig.*, 767 F. Supp. 2d 1, 10 (D.D.C. 2011) ("Under the 'customer suit' doctrine, courts stay infringement suits against product sellers while litigation proceeds against the manufacturer who produced the infringing product…. Underlying the customer suit doctrine is the preference that infringement determinations should be made in suits involving the true defendant, the party that controls the product's design, rather than suits involving secondary parties such as customers of the manufacturer."). This is precisely what has happened here: suits DataTern had been litigating against users of Microsoft's ADO.NET and SAP's BusinessObjects products have been stayed pending resolution of this case. *See*, *e.g.*, *DataTern, Inc. v. Staples, Inc. et al.*, No. 2:10CV133, and *DataTern, Inc. v. Eli Lilly and Company, et al.*, No. 2:10CV413, Order Denying Plaintiff's Motions for Reconsideration (E.D. Tex. July 14, 2012) (affirming stay of Texas suits against Microsoft's and SAP's customers in light of this suit by Microsoft and SAP).

Throughout the Complaint, SAP makes clear that the basis for its claims, and its "jurisdictional hook," is DataTern's assertion that BusinessObjects infringes DataTern's patents. *See*, *e.g.*, Complaint, ¶¶ 2, 3 ("SAP seeks this necessary relief because DataTern … has instituted several multi-defendant litigations against third parties …. In presenting its infringement

theories to these third parties, DataTern has referenced various components of SAP's BusinessObjects software…. DataTern's allegations have thus placed a cloud over SAP and its BusinessObjects products … and have created a concrete and immediate justiciable controversy between SAP and DataTern."). *See also id.*, ¶ 12 (explaining SAP's acquisition of BusinessObjects); ¶¶ 28, 29, 31 (referencing claims DataTern has allegedly made involving SAP's BusinessObjects software to certain SAP customers).

As for the Complaint's specific counts, Counts I and II seek declarations of invalidity as to the '402 and '502 patents, and Counts III and IV seek declarations that "[n]either SAP nor its products have infringed, induced others to infringe or contributed to the infringement by others of the" '402 and '502 patents. *Id.*, ¶¶ 44 and 47. Despite this broad wording, the natural implication of SAP's Complaint, when considered in context, is that SAP is seeking a declaration that it does not, through its sale of SAP products, infringe DataTern's patents.

In DataTern's First Amended Answer and Counterclaim against SAP (Docket #13), pursuant to two counts labeled "Indirect Infringement of the '402 Patent" and "Indirect Infringement of the '502 Patent," DataTern accuses SAP of infringing both the '402 and the '502 patents "by manufacturing, using, offering to sell and/or selling within the United States certain software programs and programming tools and instructing others how to use them, including, *inter alia*, BusinessObjects, or specific components, tools, or programs within BusinessObjects (*i.e.*, the Accused Products)." *Id.*, ¶¶ 12, 17. While this language is again broad, the fact that this language appears in counts for "Indirect Infringement," and the fact that the Counterclaim makes no specific averments concerning SAP's resale of other companies' infringing products, evidences that such claims were never intended to be part of this suit - a fact SAP cannot reasonably deny. Indeed, SAP specifically characterized this counterclaim as "two counts of

3

indirect infringement against … SAP … based on 'Business Objects.'" Plaintiffs' Memorandum in Opposition to DataTern's Motion to Stay or Dismiss at 8 (Docket # 42).

On July 22, 2011, DataTern moved to stay or dismiss this case, alleging, among other things, that there was no actual case or controversy. (Docket # 37 and 38.) In its Opposition brief (Docket # 42), SAP argued that a case or controversy exists due to, among other things, certain claim charts and infringement contentions. *See id.* at 10 ("The Court has subject matter jurisdiction here because DataTern's litigation efforts directed to the defendants in the Texas Action – and, in particular, the claim charts and infringement contentions that DataTern has sent them – evidence a substantial 'case of actual controversy,' …."). But as SAP further explained, the charts and contentions directed to SAP are limited to BusinessObjects. *See id.* at 6-7, 14-15.

DataTern then served infringement contentions on SAP and Microsoft on March 23, 2012. These contentions include claims against Microsoft under both the '402 and '502 patents, but only include claims against SAP under the '502 patent. On April 26, 2012, SAP filed its Motion for Partial Summary Judgment (Docket # 66). The Memorandum of Law accompanying this Motion makes clear that the Motion is solely directed to DataTern's claims against SAP as they relate to BusinessObjects. *See* Memorandum of Law in Support of SAP AG's and SAP America, Inc.'s Motion for Partial Summary Judgment at 1 ("So far, DataTern has sued more than a dozen SAP customers in four different actions in Texas based at least in part on their use of various SAP BusinessObjects products. In response, SAP brought this action to protect its customers from DataTern's ongoing litigation campaign.") (footnote omitted); *id.* at 2 ("The purpose of this motion is to narrow and focus this case to what is truly at issue. DataTern has accused at least five SAP customers of infringing both the '402 and '502 Patents ***based on their use of SAP's BusinessObjects products***.") (emphasis added); *id.* at 3 (same). SAP further

4

ME1 13797937v.1

explained that "[b]ecause DataTern accused SAP's customers of infringing *both* the '402 and '502 Patents *through their use of SAP's BusinessObjects* products, SAP included declaratory judgment claims of non-infringement and invalidity for both patents." *Id.* (bolded emphasis added).

In DataTern's Opposition to SAP's Motion for Partial Summary Judgment (Docket # 87), DataTern argued that even if the Court granted SAP's Motion, judgment should only enter with regard to the claims raised in SAP's declaratory judgment action, namely, its claims of noninfringement concerning its BusinessObjects platform. In particular, DataTern argued, "notwithstanding the breadth of SAP's request for partial summary judgment, even if the Court were otherwise inclined to enter judgment, its authority is limited to claims of infringement involving SAP's BusinessObjects products." *Id.* at 19 (Argument, Part III).

Subsequently, the Court issued its June 27, 2012, Order granting SAP's motion for partial summary judgment. Notably, however, this Order is based entirely on DataTern's failure to serve infringement contentions against SAP concerning the '402 patent. In the Court's Order, it specifically holds "[b]ecause DataTern may not amend its infringement contentions to include ones related to the '402 patent, the Court grants SAP's motion for summary judgment on their declaratory judgment claim for non-infringement of U.S. Patent No. 5,937,402 and dismisses DataTern's corresponding infringement counterclaim for damages on the same patent." *Id.* at 4.

DataTern respectfully seeks clarification that the Court's Order does not apply to any claims that SAP *directly* infringes the '402 patent through its resale of other vendors' products, such as through its resale of Microsoft products, as this is an issue that was never concretely raised, much less addressed on the merits, in this case.

5

**ARGUMENT**

I. **THE ONLY CASE OR CONTROVERSY INVOLVING SAP IN THIS SUIT IS WHETHER BUSINESSOBJECTS INFRINGES THE '402 AND '502 PATENTS**

SAP has repeatedly represented to this Court that its jurisdictional hook for this lawsuit is the claims DataTern has brought against SAP's customers arising out of their use of its BusinessObjects product. SAP has never attempted to satisfy its burden of showing that a substantial controversy exists, sufficient to confer jurisdiction, arising out of SAP's sale of Microsoft (or other companies') products. For this reason alone, the Court should provide the clarification DataTern requests as the Court lacks subject matter jurisdiction to extend its Order beyond BusinessObjects.[2]

Moreover, even if the Court originally had jurisdiction over all potential claims DataTern may have against SAP arising under the '402 patent, the Court would have been divested of such jurisdiction when DataTern elected not to assert any infringement contentions against SAP under the '402 patent.

Jurisdiction in declaratory judgment patent infringement actions was recently addressed by the Federal Circuit in *Streck, Inc. v. Research & Diagnostic Systems, Inc.*, 665 F.3d 1269 (Fed. Cir. 2012). *Streck* begins by reciting the well-established rules that: (a) the party seeking jurisdiction has the burden of showing that there is a substantial controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, i*d.* at 1281-82; and (b) jurisdiction must exist "at all stages of review, not merely at the time the complaint [was] filed," *id.* at 1282 (citing *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974))

---

[2] Had SAP attempted to show that jurisdiction exists as to such claims, the proper course would have been to stay these claims pending resolution of Microsoft's manufacturer action. *See Papst Licensing GmbH & Co. KG Litig.*, 767 F. Supp. 2d 1, 10 (D.D.C. 2011) (hearing claims against HP for the products HP manufactures, but staying claims against HP for its sale of digital cameras made by other manufacturers under the "customer-suit" exception).

6

(internal quotation marks omitted).

Here, SAP has never made any showing that there is a substantial controversy between it and DataTern concerning SAP's sale of *other vendors*' (such as Microsoft's) products. But even if it had, the Court's jurisdiction to hear such claims arising under the '402 patent evaporated when DataTern failed to assert infringement contentions against SAP under the '402 patent. As *Streck* instructs, "in patent cases, the existence of a case or controversy must be evaluated on a claim-by-claim basis." *Id.* (citation and internal quotation marks omitted).

In *Streck*, the patent owner filed a complaint alleging infringement of "one or more claims" of each patent-in-suit. *Id.* at 1284. Subsequently, Streck served infringement contentions narrowing its claim to 15 specific claims, and then further narrowed its claims to only nine claims. *Id.* The Federal Circuit affirmed the District Court's finding that there was no jurisdiction as to the previously asserted, but then withdrawn, claims, finding that "there is no evidence that R & D met its burden of showing a continuing case or controversy with respect to the unasserted claims." *Id.* In rendering this decision, the Federal Circuit cited with approval the case *Hoffman-LaRoche Inc. v. Mylan Inc.*, 2009 WL 4796736, at *5 (D.N.J. Dec. 9, 2009). In *Mylan*, the plaintiff originally asserted that Mylan was infringing all six claims of the patent-in-suit. Subsequently, the plaintiff served its infringement contentions only asserting a single claim against Mylan. Based on these facts, the court found that when plaintiff limited its infringement contentions to a single claim, the Court was divested of its declaratory judgment jurisdiction as to defendants' counterclaims except as they related to the one remaining claim. *Id.* at *5 and *9. *See also Kingspan Insulated Panels v. Centria, Inc.*, 2012 WL 1987785, at *2 (M.D. Fla. June 4, 2012) (granting partial motion to dismiss declaratory judgment complaint under *Streck* given that, although defendant asserted infringement of "one or more claims" in a cease and desist

7

letter, it later clarified that it was only alleging infringement of a single claim of its patent).

Under *Streck* and its progeny, because SAP has only presented evidence of a substantial controversy arising out of its sale of BusinessObjects, and because DataTern did not provide infringement contentions under the '402 patent directed at BusinessObjects or any other activity of SAP unrelated to BusinessObjects, the Court would not have had subject matter jurisdiction to enter an Order finding that SAP does not infringe the '402 patent for its sale of other vendors' products.

## II. DATATERN'S FAILURE TO SERVE INFRINGEMENT CONTENTIONS UNDER THE '402 PATENT IS NOT A GROUND TO FIND THAT SAP DOES NOT INFRINGE THE '402 PATENT IN ANY RESPECT

Unlike most summary judgment motions, SAP's Motion for Partial Summary Judgment was not based on the well-worn rule summary judgment standard of Fed. R. Civ. P. 56(a) (*i.e.*, the absence of a genuine dispute as to any material fact).  Rather, SAP's sole basis for its Motion was DataTern's failure to serve infringement contentions under the '402 patent for its BusinessObjects product.  While DataTern is not seeking reconsideration of the Court's Order in that regard, it is seeking clarification to ensure that the relief allowed by the Court is both commensurate with the conduct complained of by SAP and with DataTern's due process rights.

In SAP's Motion, it argued that it was entitled to partial summary judgment based on the cases *O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2005), *In re Papst Licensing GMBH & C. Litig.*, and *Enroute Sys. Corp. v. ArrivalStar S.A.*, No. C11-0451RSL (W.D. WA. March 28, 2012).  While these cases provide support for the proposition that a party may not serve infringement contentions beyond the deadline set by a court under Fed. R. Civ. P. 16, none advocate for the position that the failure to meet such a deadline may form the basis for a broad and far-reaching dismissal order.  *See*, *e.g.*, *O2 Micro*, 467 F.3d at 1362 (holding that "[t]he court may impose any 'just' sanction for the failure to obey a

8

scheduling order" but the rule being applied must be consistent with the "spirit, if not the letter, of the notice pleading and broad discovery regime created by the Federal Rules.").

In fact, the holding of *Papst* fully supports the relief DataTern is seeking in its Motion for Clarification. In *Papst*, the Court struck Papst's Final Asserted Claims and Infringement Contentions for impermissibly seeking to add new claims against new categories of devices well into the litigation, but as to Papst's new claims relating to HP's infringement of the patents-in-suit via its sales of Canon and Samsung digital cameras, the court found that such claims should not be stricken, but rather were properly stayed under the customer suit exception. *Id.*, 767 F. Supp. 2d at 10. Here, because DataTern never asserted any resale claims against SAP, there was no need to stay such claims, but the Court should nevertheless follow *Papst* and find that such claims are not properly the subject of this manufacturer action and thus are not the subject of the Court's Order.

The *Enroute* Order relied on by SAP does not suggest a different outcome. That Order, titled "Order Denying Motion to Extend Time to Serve Infringement Contentions" was, as its title suggests, limited to a holding that a party may not amend its infringement contentions when it fails to comply with a case management deadline. Here, DataTern is not questioning the Court's decision to not permit it to amend its infringement contentions against SAP under the '402 patent as they relate to BusinessObjects due to its failure to timely serve such contentions. DataTern merely seeks clarification that its failure to serve such contentions does not resolve the issue of whether SAP, as a customer of Microsoft, engages in infringement under the '402 patent for its sale of Microsoft products.

Finally, *O2 Micro* involved a situation where the patent owner was sanctioned for its failure to amend its infringement contentions after discovering a new, and previously unasserted,

theory of infringement. The Federal Circuit found that the patent owner was not diligent in seeking to amend its contentions, and thus exclusion of the new contentions was an appropriate sanction. *Id.* at 1369. In rendering its ruling, however, the Court noted that "there may be circumstances in which the exclusion of evidence as a sanction for the failure to comply with a case management order would be an abuse of discretion," and cited *Ty, Inc. v. Softbelly's, Inc.*, 353 F.3d 528 (7th Cir. 2003), for the proposition that discriminatory sanctions imposed on one party for a minor violation would constitute an abuse of discretion. *O2 Micro*, 467 F.3d at 1369 n. 15. Here, DataTern suggests that sanctioning DataTern for its failure to submit infringement contentions against SAP under the '402 patent related to BusinessObjects by permitting SAP to sell infringing Microsoft products (conduct which has nothing to do with BusinessObjects) would be such an abuse of discretion. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 707 (1982) ("Rule 37(b)(2) contains two standards—one general and one specific—that limit a district court's discretion. First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery…. [T]he former [requirement] represents the general due process restrictions on the court's discretion."). *Cf. Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 783 (9th Cir. 1983) ("The court's imposition and selection of sanctions pursuant to Rule 37(b) must be consistent with due process requirements."); *Brown v. McCormick*, 608 F.2d 410, 414 (10th Cir. 1979) ("Rule 37 sanctions [that are] arbitrary and in violation of … due process rights … will render a judgment void.").

As the court explained in *Yodlee, Inc. v. CashEdge, Inc.*, 2007 WL 1454259 (N.D. Cal. May 17, 2007) (examining the same Patent Local Rules at issue in *O2 Micro* and distinguishing the *O2 Micro* case), "[t]he Patent Local Rules were designed to prevent parties from shifting

10

ME1 13797937v.1

their theories in reaction to adverse substantive rulings, … or late in discovery, leaving the opposing party with little time to conduct discovery on a new theory." *Id.*, at *2. While an order refusing to permit a party to amend its infringement contentions at a later date when an earlier deadline was missed may serve these interests, an order allowing judgment for wholly unrelated conduct as a sanction does not.[3]

DataTern's case against SAP – and the parties' focus in discovery – has always concerned SAP's sale of BusinessObjects. Likewise, DataTern's decision not to assert infringement contentions against SAP under the '402 patent was a decision related solely to BusinessObjects. And SAP's Motion for Partial Summary Judgment complained solely of DataTern's failure to serve contentions related to BusinessObjects. Under these circumstances, the Court should clarify that its Order too only relates to BusinessObjects.

## CONCLUSION

For all of the foregoing reasons, DataTern respectfully requests that the Court clarify that its June 27, 2012, Order does not apply to SAP's resale of other companies' products, including any Microsoft products alleged to be infringing in this suit.

Dated: July 24, 2012

McCARTER & ENGLISH, LLP

/s/Lee Carl Bromberg_____
Lee Carl Bromberg, Esq.
Erik Paul Belt, Esq.
William A. Zucker, Esq.
McCarter & English, LLP
265 Franklin Street
Boston, MA  02110

---

[3] SAP has not claimed that DataTern's infringement contentions were faulty for not identifying it as a reseller of infringing Microsoft products, and the Court's Revised Procedures for Patent Cases, Section 1.a. (Patent Disclosures) do not require such identification. *See id.*, Section 1.a.iv.

11

ME1 13797937v.1

(617) 449-6500
lbromberg@mccarter.com
Erik Paul Belt, Esq.
William A. Zucker, Esq.

and

245 Park Avenue
New York, New York  10167
(212) 609-6800

*Attorneys for Defendant
DataTern, Inc.*

12

13

## CERTIFICATE OF SERVICE

    I certify that, on this 24th day of July, 2012, I served copies of DataTern, Inc.'s Memorandum of Law in Support of its Request for Clarification Regarding the Court's June 27, 2012, Order, upon counsel of record for the other parties in the above-referenced consolidated matters via ECF.

                                                                       /s/ Lee Carl Bromberg_____
                                                                       Lee Carl Bromberg