

**INTELLECTUAL PROPERTY LAW**
ATLANTA • PHILADELPHIA • SEATTLE

PHILADELPHIA OFFICE
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
215.568.3100
Fax: 215.568.3439

*Via Hand Delivery*

August 17, 2012

DANIEL J. GOETTLE
215.564.8974
dgoettle@woodcock.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/20/12

Honorable Katherine B. Forrest
Daniel Patrick Moynihan - U. S. Courthouse
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

Re: *Microsoft Corp., SAP AG and SAP America, Inc. v. DataTern, Inc.*
Case Nos. 2011-cv-02648 and cv-02365 (KBF)

Dear Judge Forrest:

On behalf of Microsoft Corporation, we write in response to DataTern's August 14, 2012 letter ("Request for Enlargement") asking the Court to amend its pretrial schedule to allow DataTern an additional six weeks to submit its expert report on damages. As each one of DataTern's excuses is without merit, the Court should deny this request and hold DataTern to the Court-ordered schedule.

First, DataTern claims that it needs an additional six weeks for its expert report because its damages theories will depend on the Court's claim construction (Request for Enlargement at ¶ 1) ("claim construction defines the 'invention' and thus is basic to the determination of its the economic value"). As an initial matter, if DataTern felt it needed resolution of claim construction to finalize its expert report on damages, then it should have raised that issue when the schedule was set. More importantly, DataTern does not explain how the value of its alleged invention is dependent on the Court's claim construction. But even if DataTern's damages theory is dependent on a particular claim construction, its expert can simply set forth his opinions alternatively under each party's proposed constructions.

Second, DataTern claims that an extension is required because Microsoft and SAP have engaged in a calculated "joint practice" to "delay or refuse" document production (Request for Enlargement at ¶ 2). This claim is without merit. Between February 2012 (when DataTern first requested documents) and July 9, 2012, Microsoft produced more than 1.8 million pages of documents, *i.e.*, more than 95%+ of the documents it produced in this case. DataTern's complaints regarding Microsoft's production are set out in a separate DataTern letter to the Court dated August 14, 2012, and Microsoft respectfully refers the Court to its response to that letter dated August 17, 2012 for a more fulsome rebuttal on this issue.

Third, DataTern claims that an extension is required because it has been unable to determine the "profitability or cost numbers for the infringing and convoyed products" sold by Microsoft (Request for Enlargement at ¶ 3). But Microsoft advised DataTern long ago that it did



Honorable Katherine B. Forrest
August 17, 2012
Page 2

not maintain profit and cost information on a per-feature basis, but instead maintained that information on a per-business-segment basis. As such, Microsoft produced per-business-segment profitability and cost information to DataTern long ago. That DataTern never bothered to depose the Microsoft 30(b)(6) financial witness regarding the previously produced documents relating to profit and cost until August 15 – just three days before the close of fact discovery – is no one's fault but DataTern's.

Fourth, DataTern claims that Microsoft nefariously shifted three 30(b) (6) topics relating to Microsoft's development costs for product features accused of infringement from Mr. Campbell to Mr. Pizzo for the purpose of running out the seven hour deposition clock (Request for Enlargement at ¶ 4). The designee shift was not done for sinister purposes but rather came about during preparation sessions during which Microsoft realized that although Mr. Campbell had supervised Mr. Pizzo in determining development costs, it was Mr. Pizzo who had actually collected the relevant information. As a result, Microsoft appropriately switched the topics to the more knowledgeable designee – Mr. Pizzo. There is nothing wrong with doing so, and DataTern has cited no law to the contrary. And, as Microsoft made both witnesses available for deposition -- Mr. Pizzo in both his personal and corporate capacity and Mr. Campbell in his personal capacity – DataTern suffered no prejudice; indeed DataTern was free to ask all the same (or any omitted) questions in Mr. Campbell's later deposition.

DataTern also vaguely asserts that it has "not yet been provided with a viable witness to explore the multitude of financial topics and records related to the application of the Georgia-Pacific factors" (*Id.*). DataTern, however, never served a deposition notice focused directly on the Georgia-Pacific factors. And while its 30(b)(6) notice included multiple financial topics, DataTern once again failed to take the deposition of Microsoft's designee on those topics until three days before the close of discovery. DataTern has no one to blame for its eleventh hour discovery scramble other than itself, and the Court should not condone such a practice by granting the requested extension.

Fifth, DataTern incorrectly asserts that Microsoft did not timely produce financial information or witnesses which allegedly hampered DataTern's expert in preparation of his damages report (Request for Enlargement at ¶ 5). Notably, DataTern cannot provide a single example of Microsoft's failure to timely produce documents or witnesses to support such a bald accusation. On the contrary, and as detailed in our other letter to the Court dated August 17, 2012, Microsoft has complied with all of its discovery obligations and has endeavored in good faith to respond to DataTern's often overbroad, vague, and convoluted discovery requests in an effort to avoid the Court's intervention. In addition to producing more than 1.8 million pages of documents from a myriad of custodians, Microsoft made six different witnesses available to testify regarding DataTern's 30(b)(6) topics.

Case 1:11-cv-02648-KBF Document 142 Filed 08/20/12 Page 3 of 3



Honorable Katherine B. Forrest
August 17, 2012
Page 3

Simply put, none of DataTern's excuses are grounded in the reality of the discovery phase of this case. On the other hand, if the Court were to allow an additional six week extension, Microsoft would be unfairly prejudiced. Damages discovery would not conclude until November 18 which would leave just two weeks to prepare in limine and/or Daubert motions and merely three weeks for final trial preparations. Nonetheless, in the spirit of compromise, Microsoft would consent to a one week reciprocal enlargement for expert damages discovery. This would give DataTern more than adequate time.

For the foregoing reasons, Microsoft respectfully submits that DataTern's request for an enlargement with respect to expert damages discovery be denied. Microsoft does consent to a one-week extension for opening and responsive damages expert reports and related expert depositions.

Respectfully submitted,

Daniel J. Goettle
dgoettle@woodcock.com
Woodcock Washburn LLP
12th Floor Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 568-3100

Attorneys for Plaintiff Microsoft Corporation

cc: Lee Carl Bromberg, Esquire
Matthew I. Menchel, Esquire