**Weil, Gotshal & Manges LLP**

*VIA HAND DELIVERY*

August 17, 2012

Honorable Katherine B. Forrest
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007



201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
+1 650 802 3000 tel
+1 650 802 3100 fax

**Edward R. Reines**
+650 802-3022
edward.reines@weil.com

Re:   *SAP AG and SAP America, Inc. v. DataTern, Inc., No. 11-cv-2648-KBF*
      *Microsoft Corporation v. DataTern, Inc., No. 11-cv-2365-KBF*

Dear Judge Forrest:

On behalf of SAP AG and SAP America, Inc. ("SAP"), we write in response to the letter delivered to Your Honor's chambers by DataTern, Inc. ("DataTern") on August 14, 2012.

I.   **DataTern's Motion Should Be Denied Under Rule 26(b)(2)(C)(ii)**

DataTern's discovery requests should be denied altogether because it had more than ample opportunity to seek the discovery it now requests by the proper deadlines, as opposed to its twelfth-hour letter to the Court. FRCP 26(b)(2)(C)(ii) (discovery must be denied when party already "had ample opportunity" for such discovery). Furthermore, DataTern's last-minute requests are unduly burdensome because they seek wide-sweeping discovery that is not responsive to DataTern's requests for production, as well as an extension of discovery this Court already denied. Incredibly, DataTern does *not* even identify for the Court FRCP 34 requests for the documents it seeks to compel, much less does it show that SAP agreed to such production in its responses which were served back in March and April.

The discovery period, which lasted over a full year, began at least by July 21, *2011*, when the Court issued a Scheduling Order stating that "Discovery [] shall not be stayed pending the Court's disposition of Datatern's anticipated motion to dismiss or stay." [D.I. 22]. Discovery was set to close on July 18, 2012.

DataTern delayed its first document request on SAP for almost seven months until February 15, 2012, more than half the discovery period – even though the Court warned it not to delay based on its stay motion. DataTern served its second set of Requests for Production on March 1, 2012. SAP promptly responded to these Requests on March 26, 2012, and April 5, 2012, respectively, clearly setting forth what it would produce.

On July 11, the Court denied DataTern's request to extend the discovery period (of which DataTern's letter is essentially a fractional reconsideration motion) by a long period and instead did so

from July 18 to August 17 "limited to depositions." [D.I. 108]. It also "directed the parties to bring any document discovery disputes to the court immediately." *Id.* DataTern ignored the Court's directive to act diligently and did not bring any complaints to the Court immediately.

Rather than immediately bringing disputes to the Court, DataTern ignored the discovery deadlines and waited almost two weeks to vastly *expand* its discovery demands with brand new requests. On July 20, 2012, DataTern demanded by email for the first time that SAP produce vast additional categories of documents, including many not covered by DataTern's requests for production. On July 29, 2012, also for the first time, DataTern invasively sought inspection of SAP's internal financial database system ("COPA").

SAP's production of documents is substantially complete, and includes documents responsive to DataTern's requests for all accused products and within the subject matter of this case, as well as discovery into financials for numerous other *unaccused* products for which DataTern had only recently requested discovery. Nonetheless, DataTern has waited for the discovery period to end, and now seeks again to *extend* the discovery period without following the procedural requirements for such a request.

This problematic situation is a product of DataTern's shifting, belated and overreaching requests, rather than SAP's conduct. DataTern makes sweeping requests, complaining that it has not received, for example, the tens of thousands of individual "contracts, sales order forms, invoices and other documents memorializing" each sale of "products which are bundled with the 18 products and/or packages that allegedly use or consume the [BusinessObjects] platform." This request for documents such as every individual "invoice" and "sales order" is impractical at this stage, even if were legitimate. If this had been raised months ago, these issues could have been resolved in an orderly manner. No litigant should be put to a last minute mass rush because its opponent defied Court directives to act diligently and instead delayed terribly. In sum, DataTern's untimely discovery demands should be denied under a straightforward application of FRCP 26(b)(2)(C)(ii) standing alone.

## II. DataTern's Alleged Discovery Complaints Are, In Any Event, Meritless

First, DataTern's accusation that SAP has not produced any financial information concerning the sale of bundled products or packages is completely incorrect. While DataTern's infringement contentions identify only 6 accused SAP products, SAP has produced over 60 detailed revenue reports that cover each of the accused SAP products, as well as information for over 2 dozen additional *unaccused* products that DataTern subsequently identified. These revenue reports were pulled from SAP's internal financial databases and produced as native spreadsheets, which itemize the tens of thousands of individual sales transactions involving the products at issue since 2005. SAP's 30(b)(6) witness, Mr. Bob Bush, testified that the spreadsheets identify bundled sales at a transaction level of granularity, and the revenue for each bundle is readily ascertainable from the spreadsheets. While DataTern complains that SAP has not produced all of the individual sales contracts and invoices for each of the tens of thousands of transactions, these documents are not covered by DataTern's requests for production. DataTern's first request for these items was made by email on July 20, 2012, over a month after the deadline for serving discovery requests. Furthermore, it would be extraordinarily burdensome to attempt to collect and produce these documents, which number in the tens of thousands. Deposition

Hon. Judge Katherine B. Forrest  
August 17, 2012  
Page 3

**Weil, Gotshal & Manges LLP**

of Sylvia Ma (Rough) at 207:23-208:4 ("[Y]ou would enter into the invoice number and you would be able to bring up an actual copy of the invoice and that would be approximately three minutes per invoice because you would need to enter each invoice one at a time.").

    Second, DataTern's allegation that SAP has not produced financial information concerning maintenance and support revenue is also incorrect. For example, SAP has produced reports showing its relevant maintenance financial data, *e.g.*, SAP00639904-26 and SAP00637614-9613. SAP has also finished production of its other relevant services financial data this week. DataTern's complaint as to maintenance and services financials is thus moot.

    Third, with respect to the profit and cost data sought by DataTern, SAP's witnesses have testified that SAP does not track profit and cost data at a per-product level. That is a reality that DataTern simply has to accept. As such, SAP has produced documents relating to the relevant profits and costs at the lowest level of granularity (i.e., at a U.S. line of business level) that it could obtain after substantial investigation. *See, e.g.*, SAP00636760-65. SAP cannot produce information it does not have.

    Fourth, DataTern's allegation that SAP has not produced any documents concerning its "partners" and resellers is incorrect. SAP has produced responsive documents that identify its thousands of OEMs, partners, and resellers at, *e.g.*, SAP00528472-74. All of the revenues generated by SAP from sales of the relevant products to these OEMs, partners, and resellers is contained in the detailed revenue spreadsheets that SAP has already produced to DataTern. SAP has also produced the indirect price lists that it located after a reasonable search, including the indirect price lists found at, e.g., SAP00531462 and SAP00529934-35. As previously mentioned, the profit data that DataTern seeks is unavailable because SAP does *not* track profitability at a product or partner level of granularity. Finally, SAP objects to producing individual contracts with these numerous OEMs, partners, and resellers because they are not covered by DataTern's requests for production, it would be extremely burdensome to attempt to collect and produce them, and DataTern has made no showing of their relevance or its purported need for them.

    Fifth, DataTern's belated request for market surveys should be denied because DataTern did not request these documents in any of its requests for production. Asking for them now by motion is discovery abuse.

    Finally, DataTern's demand that it be permitted to access SAP's internal COPA and ISP systems is completely unreasonable. Having never served a request for inspection, DataTern informally requested access to an SAP financial database for the first time on July 29, 2012, approximately six weeks after the discovery request deadline. DataTern's new, extremely burdensome and invasive demand has come only after SAP had expended substantial resources to generate over 60 detailed financial revenue reports from the COPA system for the accused products, as well as a lengthy supplemental list of over 25 additional *unaccused* SAP products subsequently identified by DataTern. Allowing access to an adversary of such sensitive information far beyond what is relevant to the case should be rejected as inappropriate altogether.

Hon. Judge Katherine B. Forrest
August 17, 2012
Page 4

**Weil, Gotshal & Manges LLP**

Respectfully submitted,

/s/ Edward R. Reines
Edward R. Reines
Counsel for Plaintiffs SAP AG and SAP America, Inc.

cc: Counsel for DataTern, Inc. (via electronic mail)