

August 15, 2012

VIA HAND DELIVERY

The Honorable Katherine B. Forrest
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Microsoft Corporation v. DataTern, Inc.*, No. 11-cv-2365-KBF
    *SAP AG and SAP America, Inc. v. DataTern, Inc.*, No. 11-cv-2648-KBF

Dear Judge Forrest:

William A. Zucker
Partner
T. 617.449.6516
F. 617.607.9152
wzucker@mccarter.com

DataTern, Inc. respectfully requests, pursuant to paragraph 2.F of the Court's Individual Practices and Local Rule 37.2, an informal conference with the Court to discuss the filing of a Motion to Strike Microsoft Corporation's Equitable Defenses based on Microsoft's refusal to provide Fed. R. Civ. P. 30(b)(6) testimony concerning these defenses.

McCarter & English, LLP
265 Franklin Street
Boston, MA 02110-3113
T. 617.449.6500
F. 617.607.9200
www.mccarter.com

Microsoft designated David Killough, Microsoft's assistant general counsel in the company's litigation group, to provide testimony on its behalf concerning Microsoft's equitable defenses in this case. During this deposition, Mr. Killough refused to provide testimony on virtually every topic that he was designated to testify on, other than deferring to a prepared script drafted by Microsoft's outside lawyers. Mr. Killough testified that he easily spent less than two hours and fifteen minutes preparing for his deposition,[1] that he spent less than five minutes attempting to familiarize himself with Microsoft's corporate records in order to give full and complete testimony,[2] and that he did not meet with any Microsoft employees to prepare, other than a Microsoft paralegal, with whom Mr. Killough met for two minutes.[3] Mr. Killough also admitted that he "only skimmed" DataTern's first 30(b)(6) deposition notice, only read, but did not study, DataTern's second amended notice, and was not "terribly familiar" with the topics for which he was designated to testify on.[4] Mr. Killough then testified that no one at Microsoft edited the scripted testimony prepared for him by Microsoft's outside lawyers, except that he edited it "for style and syntax but not substance."[5] More instances of Mr. Killough's non-responsive answers are contained in the attached appendix.

BOSTON

HARTFORD

NEW YORK

NEWARK

With regard to Microsoft's equitable defenses, the only defense Microsoft is currently pursuing is laches. In Microsoft's interrogatory responses, Response No. 18, Microsoft made conclusory allegations of evidentiary and economic prejudice (such prejudice is a required element of laches), but refused to provide any factual support for these statements. In particular, Microsoft claimed "the loss of important records, the impairment of important witnesses, and the unreliability of memories about important events because

PHILADELPHIA

STAMFORD

WILMINGTON

---

[1]   *Id.* at 9:23 to 10:2. *See, e.g., id.* at 9:4-6 (Q. "So is it fair to say to prepare for [your] deposition today, you spent less than two hours and 15 minutes." A. "Easily less than that.").

[2]   *Id.* at 10:3-11 (Q. "Did you undertake any effort to review Microsoft's corporate records in order for you to give full and complete testimony to the topics for which you have been designated to testify?" A. "I only -- only briefly." Q. "How long did -- how much time did you spend reviewing documents?" A. "Less than five minutes.").

[3]   *Id.* at 8:14-18; 9:17-22; and 11:15-21.

[4]   *Id.* at 8:3-10.

[5]   *Id.* at 30:24 to 31:8.

ME1 13973570v.1

August 15, 2012
Page 2

they occurred in the distant past" and that "had DataTern's claims been timely presented, Microsoft could have changed its position in a significant way by switching the accused features to admittedly noninfringing modes ...." *Id.*, Resp. No. 18. Having failed to provide the factual support for these contentions in Microsoft's interrogatory responses, DataTern sought to discover this information through a 30(b)(6) deposition. But when Mr. Killough was asked during his deposition to provide this missing information, he testified as follows:

Q.  What important records did Microsoft lose?
A.  I don't have any information beyond what's in Exhibit 7 in response to Interrogatory 18.
Q.  Did Microsoft in fact lose any important records?
A.  I don't have any information other than indicated in response to -- excuse me, other than in Exhibit 7 in response to Interrogatory 18.
Q.  So as you sit here today, you can't identify any actual important records that Microsoft lost?
A.  I wouldn't have anything to add to Exhibit 7 and Interrogatory 18 as I sit here today.
Q.  Okay. Well, Exhibit 7 and Interrogatory 18 just generally allege the loss of important records, correct?
A.  I see that it alleges the loss of important records. I see that it states that.
Q.  Okay. Do you know whether Microsoft is actually alleging the loss of important records?
A.  It states so here.
Q.  But Microsoft can't identify which records those are?
A.  As I sit here today, I can't tell you what those are.
Q.  Who are the important witnesses who have been impaired and how have they been impaired?
A.  Same answer.
Q.  So Microsoft can't identify any specific witness to have been impaired?
A.  Not as I sit here today. I don't have that information.
Q.  And Microsoft can't identify how they have been impaired?
A.  As I sit here today, I can't provide with you that information.
Q.  Okay. It says "And the unreliability of memories about important events because they occurred in the distant past." When you testified as to that, what are the important events you are referring to?
A.  I don't have additional information as to what is provided here.
Q.  So you're not able to provide any of the actual events that this is [in] reference to?
A.  That's right.
Q.  When you say "the distant past," what do you mean?
A.  I don't have of a characterization other than what it says.
Q.  Do you know how far back you were thinking of when you used the term distant past?
A.  I relied on counsel's characterization, not my own.
Q.  You also allege that Microsoft suffered economic prejudice, correct?
A.  That's what it says.
Q.  Can you identify the economic prejudice Microsoft claims it suffered.
A.  I don't have any information other than what is provided in Exhibit 7 and in response to Interrogatory 17.
Q.  It says, "Had DataTern's claims been timely presented, Microsoft could have changed its position in a significant way by switching the accused features to admittedly noninfringing modes and therefore, Microsoft's potential damages would have been avoided or minimized had DataTern filed its counterclaim sooner." Do you see that?

ME1 13973570v.1

August 15, 2012
Page 3

A. I see those words.
Q. How could Microsoft have changed its position in a significant way?
A. I don't have information in addition to what's indicated in Exhibit 7 or in response to Interrogatory 18.
Q. How would Microsoft have switched the accused features to admittedly non-infringing modes?
A. Same answer.
Q. Could Microsoft have done that?
A. Says so.
Q. Can you tell me how?
A. I don't have any additional information.
Q. Okay. Is this something that Microsoft's lawyers told you Microsoft could do?
A. Microsoft is, you know, so states that and counsel's investigation was responsible for what's in here. Just like it was an interrogatory response or pleading or many other things.
Q. It says, "Therefore, Microsoft potential damages would have been avoided or minimized had Datatern filed its counterclaims sooner." What are Microsoft's potential damages?
A. I have no information other than what is indicated in Exhibit 7 or in response to Interrogatory 18.
Q. Can Microsoft identify or quantify its potential damages in any way?
A. I have no additional information.

*Id.* at 196:6 to 200:25.

Having refused to provide 30(b)(6) testimony to provide factual support within Microsoft for its laches defense, or to provide testimony that there was a noninfringing alternative, the defense should be stricken and Microsoft should be precluded from presenting such evidence to the jury. *See Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997) ("Pursuant to Rule 37(d), the Court can impose sanctions where a party or person designated under Rule 30(b)(6) fails to appear.... Producing an unprepared witness is tantamount to a failure to appear....") (citations and internal quotation marks omitted). DataTern and its experts have been prejudiced by the failure to provide this factual information for timely consideration and rebuttal.

The failure to provide this information in a timely fashion has prejudiced DataTern in its ability to rebut the factual basis for any such contentions. In addition, such factual information may be pertinent to DataTern's damage expert evaluation and considerations in the preparation of its expert damages report.

The parties met and conferred by telephone on August 15 to discuss this letter but were unable to resolve this dispute.

Respectfully,

*William A. Zucker*
William A. Zucker

cc: Counsel for Microsoft and Counsel for SAP

ME1 13973570v.1

## APPENDIX A TO AUGUST 15, 2012 LETTER TO JUDGE FORREST

The following testimony is an illustrative example of numerous exchanges during Mr. Killough's deposition concerning Topics 9 and 65 relating to Microsoft's equitable defenses:

Q. The bottom of Page 1 [of your prepared statement], you say, "For example, as Datatern alleges in its responses to Microsoft's Interrogatory No. 1, Ontos and FireStar had actual knowledge of Microsoft's alleged interest in object-to-relational mapping software since the late 1990's." Do you see that?

A. I see that.

Q. What's your basis for making that statement? ...

A. I have no knowledge other than as indicated in the written responses that have been provided and whatever is provided also in interrogatory response 18.

Q. Was Microsoft in fact interested in object-to-relational mapping since the late 1990s?

A. I have no information other than as conveyed in the written responses.

Q. ... You say, "For example, as Datatern alleges in its response to Microsoft's Interrogatory No. 1, Ontos and FireStar had knowledge of Microsoft's alleged interest in object-to-relational mapping software since the late 1990s." What do you mean by your use of the word alleged?

A. I really have no information on that subject other than the words on the page.

Q. Okay. So you can't tell me whether Microsoft, in fact, had an interest or not?

A. I have no additional information.

Q. I am just trying to understand what you mean by "Ontos and FireStar had knowledge of an alleged interest." I don't understand what that means.

A. I have no additional information.

...

Q. You say on Page 2 at the top of the page, "Information about ADO.net which DataTern accuses of infringement was publicly available on or before its release in February of 2002." Do you see that?

A. I see that.

1

> Q. What specific information are you referring to?
>
> A. I don't have any information other than -- other than as indicated in the written response and whatever may be in the response to Interrogatory 18.

*Id.* at 173:23 to 177:7.

> Q. If I were to go through each and every one of the paragraphs [in your prepared testimony] and ask you what the basis is for Microsoft's contention that – that these releases or technical specs or marketing materials put DataTern on actual notice, would you be able to provide me any testimony other than what's in this written testimony that was provided by your lawyers?
>
> A. I do not believe I have anything to add to Exhibit 7 and the response to Interrogatory 18.

*Id.* at 193:22-194:9

> Q. Are you even familiar with the documents that are being referenced in your testimony?
>
> A. I don't know what you mean by familiar. I don't believe I have studied them. Certainly not all of them.

*Id.* at 194:10-15

> Q. Did you have a binder made for you with all of the documents referenced in this written testimony?
>
> A. There was a binder made available to me that I understand had these documents and whether it had all of them, I don't know.
>
> Q. Did you review that binder?
>
> A. I at most just spun through it.
>
> Q. Did you substantively review it?
>
> A. No.

*Id.* at 195:5-14

2