# United States Court of Appeals
# for the Federal Circuit

———————————

**MICROSOFT CORPORATION,**
*Plaintiff-Appellee,*

**v.**

**DATATERN, INC.,**
*Defendant-Appellant.*

———————————

**USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:** _____
**DATE FILED:** May 05, 2014 ___

2013–1184

———————————

Appeal from the United States District Court for the
Southern District of New York in No. 11–CV–2365, Judge
Katherine B. Forrest.

- - - - - - - - - - - - - - - - - - - - - - - -

**SAP AG, AND SAP AMERICA, INC.,**
*Plaintiffs-Appellees,*

**v.**

**DATATERN, INC.,**
*Defendant-Appellant.*

———————————

2013–1185

———————————

2          MICROSOFT CORPORATION v. DATATERN, INC.

Appeal from the United States District Court for the Southern District of New York in No. 11–CV–2648, Judge Katherine B. Forrest.

———————————

Decided: May 5, 2014

———————————

EDWARD R. REINES, Weil Gotshal & Manges LLP, of Redwood Shores, California, argued for all plaintiffs-appellees. With him on the brief were ANDREW L. PERITO and EVAN N. BUDAJ. Of counsel on the brief were DAN GOETTLE, DALE M. HEIST and ALEKSANDER J. GORANIN, Woodcock Washburn, LLP, of Philadelphia, Pennsylvania.

ERIK PAUL BELT, McCarter & English, LLP, of Boston, Massachusetts, argued for defendant-appellant in case no. 2013-1184. With him on the brief was LEE CARL BROMBERG.

LEE CARK BROMBERG, McCarter & English, LLP, of Boston, Massachusetts, argued for defendant-appellant in case no. 2013-1185. With him on the brief was ERIK PAUL BELT.

———————————

Before PROST and MOORE, *Circuit Judges.*[1]

MOORE, *Circuit Judge.*

DataTern, Inc. (DataTern) appeals from the district court's grant of summary judgment that certain Microsoft Corporation (Microsoft) and SAP AG and SAP America, Inc. (collectively, SAP) products do not infringe asserted

———————————

[1] Chief Judge Rader has taken no part in this decision due to recusal.

MICROSOFT CORPORATION v. DATATERN, INC.                    3

claims of U.S. Patent Nos. 5,937,402 and 6,101,502 and challenges the scope of the district court's summary judgment grant to SAP. DataTern also challenges the court's denial of its motion to dismiss Microsoft's and SAP's (collectively, Appellees) declaratory judgment actions for lack of subject matter jurisdiction. We hold that the district court had jurisdiction over both Microsoft's and SAP's declaratory judgment challenges to the '502 patent and over SAP's challenge to the '402 patent, but not over Microsoft's challenge to '402 patent. We therefore *affirm-in-part* and *reverse-in-part* the court's denial of DataTern's motion to dismiss for lack of jurisdiction. We also *affirm* the grant of summary judgment to Microsoft with regard to the '502 patent, and *affirm-in-part* and *reverse-in-part* the grant of summary judgment to SAP.

BACKGROUND

Prior to the cases at issue in this appeal, DataTern sued several Microsoft and SAP customers, alleging infringement of the '402 and/or '502 patents. DataTern sent these customers claim charts alleging infringement based on the customers' use of Microsoft's ADO.NET and SAP's BusinessObjects software. The claim charts extensively refer to Microsoft and SAP functionality. For example, claim charts alleging SAP's customers' infringement of the '402 and '502 patents cite to SAP-provided BusinessObjects user guides and documentation for each element of the representative claims. Similarly, claim charts alleging Microsoft's customers' infringement of the '502 patent cite to Microsoft-provided ADO.NET online documentation for each element of the representative claims. However, the '402 patent claim charts cite only to third-party-provided (*i.e.*, not Microsoft-provided) ADO.NET documentation for several claim limitations.

Case 1:11-cv-02648-KBF   Document 240   Filed 05/05/14   Page 4 of 22

4                    MICROSOFT CORPORATION v. DATATERN, INC.

Several of the customers that had been sued by DataTern demanded indemnification from Appellees. After receiving the indemnification requests, a Microsoft representative contacted DataTern's CEO to discuss the ongoing customer lawsuits. During these discussions, the representative told DataTern's CEO that Microsoft had no obligation to defend or indemnify its customers, and the CEO told the representative that DataTern was not interested in suing Microsoft. SAP and DataTern did not discuss the customer lawsuits or the '402 and '502 patents prior to SAP's declaratory judgment complaint.

The cases at issue in this appeal were initiated when Appellees filed separate, and later consolidated, noninfringement and invalidity declaratory judgment actions against DataTern. DataTern moved to dismiss the complaints for lack of subject matter jurisdiction and filed conditional counterclaims for infringement of both the '402 and '502 patents. The district court denied DataTern's motion to dismiss. It found that the following facts weighed in favor of jurisdiction over the declaratory judgment actions: (1) the claim charts in the customer lawsuits; (2) the indemnification demands from Appellees' customers; (3) DataTern's conditional counterclaims; (4) DataTern's reference to Appellees' "infringement" in its proposed scheduling order; and (5) DataTern's refusal to grant Appellees a covenant not to sue. *Microsoft Corp. v. DataTern, Inc.*, C.A. No. 11-cv-02365-KBF (S.D.N.Y. Mar. 5, 2012), ECF No. 70.

Following claim construction, DataTern conceded noninfringement based on the court's construction of several claim terms, and the court entered summary judgment. DataTern appeals.

DISCUSSION

I. Jurisdiction

Whether the district court had subject matter jurisdiction is a question we review *de novo*. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008). The threshold question for declaratory judgment jurisdiction is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted).

DataTern argues that the court lacked jurisdiction because DataTern never approached Appellees regarding a license, never accused Appellees of infringement, and indicated that it did not intend to sue Microsoft. DataTern asserts that Appellees' only alleged injury—the risk that they will lose customers—is remote and hypothetical. DataTern contends that because Appellees were not obligated to defend or indemnify these customers, they lack a sufficient legal interest to support jurisdiction.

Appellees respond that jurisdiction exists because DataTern's infringement claims against their customers are "based on" the customers' use of Appellees' products and thus impliedly assert indirect infringement against Appellees. They argue that under *Arris Group, Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011), declaratory judgment jurisdiction exists where a patentee accuses customers of direct infringement based on the use of the supplier's product, because such accusations establish that the patentee could have brought indirect infringement claims against the supplier. Appellees contend that the indemnification demands they have received from their customers support existence of a substantial controversy. They also argue that DataTern's aggressive litigation strategy—it has sued more than 100 entities for infringement of the '402 and '502 patents—supports the existence of a substantial controversy.

We hold that the district court had jurisdiction over Appellees' challenges to the '502 patent and over SAP's challenge to the '402 patent, but not over Microsoft's challenge to the '402 patent.  We agree with Appellees that the claim charts in the customer suits strongly support the conclusion that the district court had jurisdiction.  In *Arris*, we recognized that "where a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action *if* . . . there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers."  639 F.3d at 1375 (emphasis added).  We determined that declaratory judgment jurisdiction existed because the patentee's charges of infringement against the declaratory judgment plaintiff's customers carried an "implied assertion that [the declaratory judgment plaintiff] was committing contributory infringement, and [the patentee] repeatedly communicated this implicit accusation directly to [the declaratory judgment plaintiff] during the course of a protracted negotiation process."  *Id.* at 1381.  Notably, *Arris* analyzed each element required for contributory infringement under § 271(c) before determining that there was an implied assertion of contributory infringement that supported jurisdiction.  *Id.* at 1376–78; *see also Microchip Tech. Inc. v. Chamberlain Grp., Inc.*, 441 F.3d 936, 943–44 (Fed. Cir. 2006) (finding no declaratory judgment jurisdiction because "there is no indication that [the declaratory judgment plaintiff] is inducing or contributing to infringement by its customers"); *Cisco Sys., Inc. v. Alberta Telecomms. Research Ctr.*, 538 F. App'x 894, 897–98 (Fed. Cir. 2013) (nonprecedential) (finding no declaratory judgment jurisdiction regarding contributory infringement after the patentee "conceded that there are substan-

tial non-infringing uses of [the declaratory judgment plaintiff's] products").

To the extent that Appellees argue that they have a right to bring the declaratory judgment action solely because their customers have been sued for direct infringement, they are incorrect. DataTern has accused customers using Appellees' software packages of infringing the asserted method claims, but there are no arguments that there is a case or controversy between DataTern and Appellees on direct infringement. If Appellees had an obligation to indemnify their customers, they would then have standing to bring suit. *Arris*, 639 F.3d at 1375; *Microchip*, 441 F.3d at 943. In that instance, Appellees would stand in the shoes of the customers and would be representing the interests of their customers because of their legal obligation to indemnify. But here there is no evidence of such an obligation and Appellees concede that no such obligation exists. Instead, Appellees seek to broaden our precedent quite substantially by arguing that a customer request to indemnify ought to give rise to standing, without regard, it appears, to the merit of the customer request. This cannot be. Thus, we decline Appellees' request to hold that their customers' indemnification requests, which they concede are not valid, alone can create standing and thus a basis for jurisdiction over Appellees' declaratory judgment actions in the Southern District of New York.

Importantly, even if there were such an obligation—to indemnify a customer already sued by the patentee in Texas—it would not justify what Appellees seek here. A case has already been filed against these customers in the Eastern District of Texas. Appellees cannot seek a declaration from a New York court on behalf of customers they must indemnify where a suit against these very same customers on all the same issues was *already* underway in a Texas court. *See Futurewei Techs., Inc. v. Acacia*

*Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013). By agreeing to indemnify any one of their customers, Microsoft could defend its customers and efficiently and effectively participate in *the Texas action*. We do not address whether Appellees would be entitled to file a declaratory judgment action if they were obligated to indemnify a customer who had not already been sued by DataTern.

To the extent that Appellees argue that DataTern's suits against its customers automatically give rise to a case or controversy regarding induced infringement, we do not agree.[2] To prove inducement of infringement, unlike direct infringement, the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement. *Global–Tech Appliances, Inc. v. SEB S.A.,* 131 S. Ct. 2060, 2068 (2011). Absent the knowledge and affirmative act of encouragement, no party could be charged with inducement. Thus, in determining whether there is a case or controversy of sufficient immediacy to establish declaratory judgment jurisdiction we look to the elements of the potential cause of action. *See Arris*, 639 F.3d at 1376–78 (analyzing each contributory infringement factor to determine whether there was at the time of the declaratory judgment action a case or controversy regarding potential contributory infringement). Certainly it is not the case that definitive proof must exist that would establish each element. But, to establish a substantial controversy regarding inducement,

---

[2] For example, suppose that the accused product was capable of multiple uses and there was no evidence or allegation that the manufacturer encouraged the use accused of infringement.

there must be allegations by the patentee or other record evidence that establish at least a reasonable potential that such a claim could be brought.

Applying this principle to the appeals before us, we hold that the claim charts used in the customer lawsuits support a finding of jurisdiction for only some of the declaratory judgment challenges at issue. The claim charts provided to the SAP customers allege direct infringement of the '402 and '502 patents based on SAP's customers' use of BusinessObjects. Moreover, these claim charts cite to SAP-provided user guides and documentation for each claim element. In other words, DataTern's claim charts show that SAP provides its customers with the necessary components to infringe the '402 and '502 patents as well as the instruction manuals for using the components in an infringing manner. Providing instructions to use a product in an infringing manner is evidence of the required mental state for inducing infringement. *See Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363–65 (Fed. Cir. 2006). Considering these instructions in view of the rest of the evidence on record, we conclude that SAP has established that there existed a substantial controversy regarding whether SAP induces infringement. We thus affirm the district court's conclusion that declaratory judgment jurisdiction exists for SAP's suit on the '402 and '502 patents.

The same is true for DataTern's '502 patent claim charts as they relate to Microsoft's customers. The claim charts cite to Microsoft-provided online documentation for each limitation of the '502 patent's representative claims. Thus, these claim charts can be read to allege that Microsoft is encouraging the exact use which DataTern asserts amount to direct infringement. This record evidence supports Microsoft's claim that there is a substantial controversy regarding inducement. Under the totality of the circumstances, we conclude that Microsoft estab-

10          MICROSOFT CORPORATION v. DATATERN, INC.

lished declaratory judgment jurisdiction for its suit on the ’502 patent.

The ’402 patent claim charts as they relate to Microsoft’s customers, however, are substantively different. They cite exclusively to third-party—not Microsoft-provided—documentation for several key claim limitations.[3]   While these claim charts allege the customers’ direct infringement of the ’402 patent based on its use of Microsoft’s ADO.NET, they do not impliedly assert that Microsoft induced that infringement.   Nothing in the record suggests that Microsoft encouraged the acts accused of direct infringement, and simply selling a product capable of being used in an infringing manner is not sufficient to create a substantial controversy regarding inducement.

The ’402 patent claim charts likewise do not impliedly assert contributory infringement against Microsoft.   For example, they do not imply or suggest that Microsoft’s ADO.NET is not “a staple article or commodity of commerce suitable for substantial noninfringing use.”   35 U.S.C. § 271(c) (2012).   Indeed, our review of the record does not uncover any evidence that Microsoft’s ADO.NET is not suitable for substantial noninfringing uses, or that Microsoft knew that it was “especially made or adapted for use in an infringement” of DataTern’s patents.   *Id.*

In concluding that jurisdiction existed in this case, the district court relied heavily on DataTern’s conditional

---

[3]   For example, no claim chart cites to Microsoft-provided documentation for the “defining” and “forming” steps, which are at the center of the parties’ dispute over infringement.   J.A. in appeal no. 2013-1184, at 758–63, 777–82, 817–26, 848–57, 861–65, 890–901, 925–29, 940–49, 964–73.

MICROSOFT CORPORATION v. DATATERN, INC.                    11

counterclaims, its reference to "infringement" in the scheduling order, and its refusal to grant Appellees a covenant not to sue—all post-complaint facts. A declaratory judgment plaintiff must plead facts sufficient to establish jurisdiction at the time of the complaint, and post-complaint facts cannot create jurisdiction where none existed at the time of filing. *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1383–84 (Fed. Cir. 2010); *Spectronics Corp. v. H.B. Fuller Co., Inc.*, 940 F.2d 631, 634–35 (Fed. Cir. 1991).

Even if these post-complaint facts could be considered, these three circumstances, considered in view of the rest of the evidence on record, do not establish an actual controversy. The district court reasoned that DataTern's conditional counterclaims weighed in favor of jurisdiction because DataTern was required to make them in compliance with Rule 11 of the Federal Rules of Civil Procedure. This analysis is logically flawed because DataTern's counterclaims were conditioned on the court's denying DataTern's motion to dismiss, *i.e.*, on the court's determining that there was a substantial controversy of sufficient immediacy and reality regarding Appellees' infringement. Thus, by virtue of their conditional nature, DataTern's counterclaims could only become a part of the case after the court made a *de facto* determination that they passed Rule 11 muster. The same is true for DataTern's discussion of infringement in its proposed scheduling order, which was made in the context of its conditional counterclaims. Likewise, refusal to grant a covenant not to sue "is not sufficient to create an actual controversy" because "a patentee has no obligation . . . to make a definitive determination, at the time and place of the competitors' choosing, that it will never bring an infringement suit." *Prasco*, 537 F.3d at 1341.

Moreover, other circumstances that may have otherwise supported jurisdiction over Microsoft's declaratory

judgment challenge of the '402 patent are not present in this case. For example, in *Arris* the patentee and the declaratory judgment plaintiff engaged in a "protracted negotiation process" before the declaratory judgment plaintiff finally brought suit. *Arris*, 639 F.3d at 1381. Here, however, the only time DataTern and Microsoft communicated, DataTern assured Microsoft that it did not intend to sue Microsoft. Similarly, a patentee's aggressive enforcement strategy, even in the absence of direct threats against the declaratory plaintiff, may also support jurisdiction. *See Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 737–38 (Fed. Cir. 1988). We are sympathetic to Microsoft's arguments that DataTern's litigiousness supports the existence of a controversy between Microsoft and DataTern.[4] However, we also note that DataTern's litigation strategy appears to involve suing software users, not software suppliers. And there is no record evidence that Microsoft encouraged the acts that DataTern argues amount to direct infringement by its customers in the Texas actions. This cuts against Microsoft's arguments that they might somehow be next or that litigiousness against direct infringers alone ought to create a substantial controversy regarding inducement.

---

[4]    That it would be more efficient to confront all the questions at one time and in one place might support the district court's decision to exercise declaratory judgment jurisdiction after such jurisdiction has been established, but it does not create such jurisdiction when none exists. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites.").

Under the totality of the circumstances and viewing the evidence of record, we hold that the district court possessed declaratory judgment jurisdiction over the '402 and '502 patents with respect to SAP and over the '502 patent with respect to Microsoft, but not over the '402 patent with respect to Microsoft. Microsoft had the burden of establishing the court's jurisdiction. Under the totality of the circumstances, we conclude that Microsoft failed to establish that a substantial controversy existed regarding Microsoft's infringement of the '402 patent at the time the complaint was filed. We affirm-in-part and reverse-in-part the district court's jurisdictional decision and remand with orders to the district court to dismiss Microsoft's declaratory judgment challenge of the '402 patent.

## II. Summary Judgment of Noninfringement—'502 Patent

We review the district court's grant of summary judgment under the law of the regional circuit. *MicroStrategy Inc. v. Bus. Objects, SA*, 429 F.3d 1344, 1349 (Fed. Cir. 2005). The Second Circuit reviews the district court's summary judgment decisions *de novo*. *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). We review the district court's claim construction *de novo*. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455–56 (Fed. Cir. 1998) (en banc).

### A. Background

The '502 patent is directed to interfacing an object-oriented application with a relational database. '502 patent col. 1 ll. 22–24. An object-oriented application cannot easily interface with a relational database because of the structural differences between the objects in the application and the tables in the database. *Id.* col. 1 ll. 25–49. To solve this problem, the '502 patent discloses creating "interface objects" that act as intermediaries between the object-oriented application and the relational

14                    MICROSOFT CORPORATION v. DATATERN, INC.

database. *Id.* col. 2 ll. 34–38. To create the interface objects, the '502 patent discloses selecting an "object model," generating a mapping between the database schema and the object model, and creating the interface object from that mapping. *Id.* col. 2 ll. 28–34, 40–44. A "runtime engine" then accesses data in the relational database using the interface object. *Id.* col. 2 ll. 34–38; Fig. 1.

Claim 1 is representative (emphases added):

A method for interfacing an object oriented software application with a relational database, comprising the steps of:

selecting an *object model*;

generating a map of at least some relationships between schema in the database and the selected *object model*;

employing the map to create at least one interface object associated with an object corresponding to a class associated with the object oriented software application; and

utilizing a runtime engine which invokes said at least one interface object with the object oriented application to access data from the relational database.

### B. "object model"

The district court construed "object model" as "[a] template with a predetermined standardized structure both relating to an object-oriented software application and including object classes and inheritance relationships among classes." DataTern agreed that SAP's BusinessOb-

jects does not infringe the asserted claims if "object model" requires "object classes," and the district court entered summary judgment accordingly.[5]

On appeal, DataTern asserts that the district court erred by requiring the object model to include "classes."[6] It contends that the specification broadly defines "object model" as "a template with a predetermined standardized structure." *See* '502 patent col. 2 ll. 40–42. DataTern asserts that the court's construction improperly excludes the preferred embodiment of an object model shown in Figure 3 of the '502 patent. In particular, DataTern points out that Figure 3 depicts an object model having class *attributes*, such as "CPerson.name," but not having class *behaviors*. DataTern argues that because the parties also stipulated to a construction of "class" that requires attributes *and* behaviors, an "object model" that does not include class behaviors cannot be construed to require classes.

---

[5] DataTern also agreed that BusinessObjects does not infringe the asserted claims of the '502 patent based on the district court's claim construction of two other terms, "to create at least one interface object" and "runtime engine." Because our construction of "object model" is sufficient to affirm the judgment of noninfringement of the '502 patent, we do not reach the construction of these other terms.

[6] DataTern also challenges the district court's determination that object model requires inheritance relationships among classes and that the object model be related to the object-oriented software application. Because the requirement of classes is dispositive, we do not address the other aspects of the court's claim construction of object model.

16                    MICROSOFT CORPORATION v. DATATERN, INC.

We agree with SAP that the district court properly construed "object model" to require classes. The plain and ordinary meaning of "object model" requires classes. All of the evidence on record supports this understanding of the plain and ordinary meaning. SAP's expert opined that the "object model" was a well-known term of art and was understood to include a "collection of classes." J.A. in appeal no. 2013-1185 (J.A. (SAP)), at 1091–93, 1125. Even the inventor of the '502 patent testified, contrary to DataTern's assertions, that an object model, in general and in the context of the '502 patent, includes a "set of classes." J.A. (SAP) 6333–34. While DataTern's expert submitted a claim construction declaration, he never proposed a construction for "object model" or otherwise challenged the definitions set forth by SAP's expert and the '502 patent inventor. J.A. (SAP) 1048–59. DataTern's predecessor, FireStar, also previously argued that object model of the '502 patent should be construed to require "a set of classes."[7] J.A. (SAP) 4529.

The specification confirms that the inventors of the '502 patent did not deviate from the plain and ordinary meaning of object model, which includes classes. The only depicted object model, shown in Figure 3 (reproduced below) includes classes "CPerson," "CProject," "CEmployee," and "CDepartment."

_____

[7]    We agree with DataTern that it is not bound by the previous claim construction positions of the prior '502 patent owner that were never litigated to final judgment. Nonetheless, this position is consistent with all of the other evidence on record that supports the requirement of classes in the construction of object model.

MICROSOFT CORPORATION v. DATATERN, INC.                    17



**FIG. 3**

'502 patent Fig. 3. The '502 patent unambiguously identi-
fies these components as classes: "[f]or example, assume
that *a class, CPerson*, has four attributes: Id, Name, Zip,
and Photo . . . ." '502 patent col. 7 ll. 22–23 (emphasis
added). Further confirming that the inventors of the '502
patent did not deviate from the plain and ordinary mean-
ing, the '502 patent makes clear that the object model
must include classes in order to practice the claimed
invention. For example, each asserted claim requires
mapping an object model to relational database schema.
The process described in the '502 patent for mapping the
object model to the relational database schema makes
clear that the object model must include "classes" in order
to be mapped. '502 patent col. 2 l. 66 – col. 4 l. 15.

Although the patent and all of the record evidence
supports the construction of "object model" to require a set
of classes, DataTern argues that we ought to reject that
plain and ordinary meaning because of a stipulation it
entered regarding the meaning of the term classes. The
parties stipulated that classes include both attributes and
behaviors. DataTern argues that the sole embodiment of

18                MICROSOFT CORPORATION v. DATATERN, INC.

an object model in the patent only uses attributes, not
behaviors. *See* '502 patent Fig. 3. Therefore, DataTern
argues that "object model" should not be construed to
require classes. We disagree. As discussed, the plain and
ordinary meaning of object model requires a set of classes.
The only embodiment in the patent discloses an object
model with classes and attributes of those classes. While
DataTern agreed to, and is bound by virtue of its stipula-
tion to, a narrower construction of classes than that
required by the '502 patent, that does not change the
correct construction of object model. The tail can't wag
the dog.

Because DataTern stipulated that SAP does not in-
fringe based on the district court's determination that an
object model must include classes, we affirm summary
judgment of SAP's noninfringement of the '502 patent.

C. Summary Judgment of Noninfringement to Microsoft

DataTern also conceded that Microsoft does not in-
fringe the asserted '502 patent claims if "object model"
must include classes. On appeal, however, Microsoft does
not make any of its own claim construction arguments
regarding the '502 patent. It instead purports to incorpo-
rate by reference SAP's claim construction arguments.
Microsoft Br. 19. DataTern asserts that this is improper
and that Microsoft has waived its claim construction
challenges.

Because the Microsoft and SAP appeals are not con-
solidated, this case does not fall under Fed. R. App. P.
28(i), which authorizes incorporation of co-party briefing
only in the case of consolidated appeals. We also note
that incorporating SAP's arguments, as Microsoft at-
tempts to do, would allow the Microsoft brief to exceed our
court's allowable word count by 3,025 words. It would be
fundamentally unfair to allow a party to use incorporation
to exceed word count. We hold that incorporation of co-

MICROSOFT CORPORATION v. DATATERN, INC.                    19

party briefing is only allowed in consolidated cases as
explained in Fed. R. App. P. 28(i) and that such incorpora-
tion cannot be used to exceed word count.  The incorpo-
rated material counts against the litigants' word count in
exactly the same manner as if it had been expressly
included in the brief.  In this case, however, because we
are affirming the district court's determination that an
"object model" must include "classes," and because
DataTern conceded Microsoft's noninfringement based on
the requirement of "classes," we affirm the district court's
grant of summary judgment of noninfringement of the
'502 patent to Microsoft.

### III.  Scope of Summary Judgment to SAP

SAP's declaratory judgment complaint sought broad
declarations that "[n]either SAP nor its products have
infringed" either the '402 or '502 patent.  DataTern's
counterclaims were equally broad, alleging that SAP
indirectly infringed the '402 and '502 patents based on
"certain software programs and programming tools . . .
including, *inter alia*, BusinessObjects . . . ." J.A. (SAP)
625.  DataTern, however, never served infringement
contentions on SAP that alleged infringement of the '402
patent.  And the infringement contentions alleging in-
fringement of the '502 patent relied solely on BusinessOb-
jects, not any other SAP software.  Nonetheless, based on
the parties' broad pleadings, the district court's order
granting summary judgment of noninfringement to SAP
encompassed the '402 patent and all SAP products "that
were or could have been accused of infringing the '402
patent." *SAP AG v. DataTern, Inc.*, C.A. No. 11-cv-02648-
KBF (S.D.N.Y. Dec. 19, 2012), ECF No. 211.

DataTern argues that the scope of summary judgment
should only include BusinessObjects and the '502 patent,
not all SAP products or the '402 patent.  It contends that
BusinessObjects was the only product asserted by SAP as

Case 1:11-cv-02648-KBF   Document 240   Filed 05/05/14   Page 20 of 22

20                    MICROSOFT CORPORATION v. DATATERN, INC.

a basis for the court's jurisdiction in its declaratory judg-
ment complaint and the only product identified in
DataTern's infringement contentions.   While DataTern
admits that it alleged that SAP infringed the '402 patent
in its counterclaims, it asserts that it never served in-
fringement contentions regarding the '402 patent.   It
argues that the infringement contentions, not the com-
plaint, should determine the scope of the judgment.

SAP responds that the scope of summary judgment
properly included both patents and all SAP products.   It
asserts that SAP's and DataTern's broad pleadings con-
firm the breadth of their dispute.   It contends that allow-
ing DataTern to unilaterally remove the '402 patent from
this case by failing to file infringement contentions would
give opportunistic patentees too much control over the
scope of declaratory judgment actions initiated by the
alleged infringers.

We hold that the district court correctly included the
'402 patent in its summary judgment order.   The court
had declaratory judgment jurisdiction over SAP's nonin-
fringement challenge to the '402 patent based, in part, on
DataTern's implied assertions of SAP's indirect infringe-
ment of the '402 patent evidenced in the claim charts
provided in the customer suits.   That DataTern later
failed to file infringement contentions for the '402 patent
did not remove the '402 patent from the case.   SAP never
abandoned its claim that the '402 patent was not in-
fringed, and DataTern did not covenant not to sue SAP on
the '402 patent after failing to file infringement conten-

Case 1:11-cv-02648-KBF    Document 240    Filed 05/05/14    Page 21 of 22

tions. Thus, the district court properly entered summary judgment of noninfringement of the '402 patent to SAP.[8]

However, we also hold that the district court erred in granting summary judgment of noninfringement to SAP for products other than BusinessObjects. Declaratory judgment jurisdiction must be determined on a product-by-product basis. *Sierra Applied Sci., Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1373–74 (Fed. Cir. 2004). The claim charts from the customer suits impliedly asserted indirect infringement based on the use of BusinessObjects, not any other SAP product. While SAP's complaint and DataTern's counterclaims invoked SAP products generally, broad pleadings alone do not define the scope of judgment when only a subset of those issues were litigated. *Tol-O-Matic, Inc. v. Proma Produkt-Und Mktg. Gesellschaft*, 945 F.2d 1546, 1554–55 (Fed. Cir. 1991). Here, only BusinessObjects was fairly at issue, and the district court's judgment could not have extended beyond BusinessObjects. We thus affirm-in-part and reverse-in-part the grant of summary judgment to SAP, and remand with orders that the district court modify the summary judgment order to cover only BusinessObjects.

## Conclusion

We *affirm* the district court's denial of DataTern's motion to dismiss Microsoft's declaratory judgment challenge of the '502 patent and *affirm* the grant of summary judg-

---

[8]    Because we deny Microsoft's declaratory judgment challenge to the '402 patent on jurisdictional grounds and because our grant of summary judgment of noninfringement to SAP with regard to the '402 patent does not require consideration of any claim construction issues, we do not reach any of the '402 patent claim construction issues in the Microsoft appeal.

ment to Microsoft with regard to the '502 patent. We *reverse* the court's denial of DataTern's motion to dismiss Microsoft's declaratory judgment challenge of the '402 patent and remand with orders that the district court dismiss Microsoft's declaratory judgment challenge of the '402 patent. We *affirm* the court's denial of DataTern's motion to dismiss for lack of jurisdiction SAP's challenges to both the '402 and '502 patents. We also *affirm-in-part* and *reverse-in-part* the grant of summary judgment to SAP, and remand with orders that the district court modify the summary judgment order to cover only BusinessObjects.

## AFFIRMED-IN-PART, REVERSED-IN-PART, REMANDED

### COSTS

No costs to either party.